(85 Misc. Rep. 131)

### VANDENBURGH v. VANDENBURGH et al.

(Supreme Court, Trial Term, Warren County. April 1914.)

1. WILLS (§ 623*)—CONSTRUCTION—ESTATES DEVISED.

Where testator gave real estate to his wife and two sons, "to be equally divided between them, they to have and hold the same for life, and to the survivor," and at the survivor's death to his then living grandchildren, the wife and sons took, under Real Property Law (Consol. Laws, c. 50)

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

§ 66, as tenants in common for life; each holding his interest independent in title from the other, with cross-remainders for life.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1445; Dec. Dig. § 623.*]

2. PERPETUITIES (§ 4*)—ESTATES BEYOND TWO LIVES IN BEING—STATUTES—CONSTRUCTION.

Real Property Law (Consol. Laws, c. 50) § 43, providing that successive estates for life shall not be limited except to persons in being at the creation thereof, and where a remainder shall be limited on more than two successive estates for life all the life estates subsequent to those of the two first entitled thereto shall be void, and on the death of those two the remainder shall take effect, does not avoid the whole limitation where more than two successive life estates are created, but allows the first two to take effect, avoiding only those following, and, where the right of the remainderman is vested and the right of possession only is postponed, the period fixed for the vesting of the remainder in possession is accelerated, and possession vests on the termination of the two life estates first created.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. § 4.*]

3. PERPETUITIES (§ 4*)—FUTURE ESTATES—CONSTRUCTION—ESTATES DEVISED—VALIDITY.

A devise to three persons as tenants in common for life and to the survivor, with gift over on the death of the survivor to the then living grandchildren of testator, is not violative of Real Property Law (Consol. Laws, c. 50) § 43, limiting the creation of successive life estates and providing that all life estates subsequent to those of the two persons first entitled thereto shall be void, merely because which of the two life estates shall follow the intention of testator is determined by the contingency which of the three devisees shall first die.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. § 4.*]

4. PERPETUITIES (§ 4*)—TIME OF VESTING OF ESTATES.

That a remainder is limited in favor of persons not in being when the limitation is created by the will does not violate Real Property Law (Consol. Laws, c. 50) § 43, providing that all life estates subsequent to those of the two persons first entitled thereto shall be void and the remainder shall take effect on their death, where the contingency on which the vesting depends must happen and the persons entitled to take are ascertained within the period permitted by the statute for the vesting of estates.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. § 4.*]

5. PERPETUITIES (§ 6*)—SUSPENSION OF ALIENATION—STATUTORY PROVISIONS.

Under Real Property Law (Consol. Laws, c. 50) § 42, providing that the absolute power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed, and that any suspension for a longer period than two lives in being at the creation of the estate is void, there may be more than two lives in being in whom an estate may be vested, provided they have an absolute power of conveying a fee in possession; but, where the absolute ownership is suspended for a greater period than two lives, there is a violation of the statute, and the attempted creation of estates is void.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. § 6.*]

6. PERPETUITIES (§ 4*)—FUTURE ESTATES—CONSTRUCTION—ESTATES DEVISED—VALIDITY.

Where testator devised his real estate to his wife and two sons, "to be equally divided between them, they to have and hold the same for life,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and to the survivor," and at the death of the survivor to his then living grandchildren, and the wife died leaving the two sons surviving, her share passed to the two sons equally for life, but her share which passed to the son first dying could not be absolutely conveyed, because it could not then be determined who would be the living grandchildren of testator at the death of the survivor, and the ownership of that share was suspended for more than two lives in being, and the gift thereof to the grandchildren was invalid, and it must be disposed of as intestate property.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. § 4.*]

7. PERPETUITIES (§ 6*)—CONSTRUCTION OF PROVISIONS—INVALIDITY IN PART— EFFECT. ·

Testator devised his property to his wife and two sons, "to be equally divided between them, they to have and hold the same for life, and to the survivor," and at the survivor's death to his then living grandchildren. The wife died leaving the two sons. *Held*, that the devise of the life estates passing from the widow to the second son dying and from the first son dying to the survivor, and by the survivor to the grandchildren, was valid, though the gift to the grandchildren of the share of the wife passing to the son first dying was invalid because suspending the power of alienation beyond two lives in being, in violation of Real Property Law (Consol. Laws, c. 50) § 42.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49– 53, 56; · Dec. Dig. § 6.*]

8. PERPETUITIES (§ 6*)—SUSPENSION OF ALIENATION.

A devise to testator's wife for life, and on her death to a son, if living, and if not living to his children, or if no children to grandchildren living at the death of the wife, does not create a remainder invalid because limited in favor of persons not in being when the limitation was created, because the limitation is only to the life estate of the wife, and on her death it must be determined whether the son or which of the other classes will take, and on the death of the widow there is a person or persons in being who can give complete title, so that there is no suspension of alienation in violation of Real Property Law (Consol. Laws, c. 50) § 42.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49– 53, 56; Dec. Dig. § 6.*]

Action by Edward M. Vandenburgh against Eliza Vandenburgh and others for the construction of the will of Jacob Vandenburgh, deceased. Decree ordered.

Frank D. Morehouse, of Glens Falls, for plaintiff.

Jenkins & Barker, of Glens Falls, for defendant Ellen Kent.

Howard J. Bush, of Glens Falls, for defendant Louise Kent.

BORST, J. This action has been brought to construe the will of Jacob Vandenburgh. Since its commencement, his widow, Eliza Vandenburgh, has died. By her death, many of the questions suggested in the complaint for construction have been eliminated, leaving but two, namely, the validity of the eighth and ninth clauses of the will.

The testator left him surviving his widow, Eliza, two sons, George and Edward, five daughters, and twelve grandchildren, each of whom are parties to the action; the widow, as before stated, however, having died since its commencement.

The portions of the two clauses of the will material to the questions here presented are:

"Eighth. All the rest * * * of all my property I give, devise and bequeath unto my said wife, Eliza J. and sons, George A. and Edward M., to be equally divided between them, they to have and hold the same for life, and to the survivor, and at the survivor's decease, then I give, devise and bequeath so much thereof as shall remain or the proceeds thereof not expended or used, to such of my grandchildren as shall then be living—I mean that would be my grandchildren if I were then living—they to take equally and have and hold the same, their heirs and assigns, forever. * * *

"Ninth. My said wife to take the lands devised to her in and by the third clause of this, my will, for life and in lieu of dower and thirds rights, and at her decease I give, devise and bequeath the said lands to my said son, Edward M., if living, if not living but leaving a child or children, then to said child or children, or if not living and no child or children living, then to my grandchildren named in the eighth clause of this, my will, and as they would take thereunder, whomsoever takes at the decease of my said wife, to have and hold the same, his heirs and assigns forever. * * * *"

[1] The widow, Eliza, and the two sons, George and Edward, take the estate granted to them by the eighth clause as tenants in common; each holding his interest independent in title from the other. There are words of survivorship in this clause, but these refer to the estate which each tenant for life takes and passing from one dying to the survivors, not to the whole estate devised. This construction gives effect to the words, "to be equally divided between them," in the clause, which under the claim urged that the life tenants take in joint tenancy, overlook and disregard.

There are found no words in the clause from which it can be said that it was clearly the intention of the testator to create a joint tenancy in the estate devised, and nothing short of this will make such devise a joint tenancy. If there is any doubt from the language of the will as to the nature of this tenancy, it would be removed by the authorities, for it is now the rule in this state that beneficiaries take as tenants in common or distributively, unless there is something in the context of the will denoting that it was the intention of the testator that they should take as joint tenants or as a class. Schneider v. Heilbron, 115 App. Div. 720, 101 N. Y. Supp. 152; Overheiser v. Lackey, 207 N. Y. 229, 100 N. E. 738. By section 66 of the Real Property Law, it is provided that:

"Every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy."

The words, "they to have and hold the same for life and to the survivor," when read in connection with the words preceding, "to be equally divided between them," indicate quite clearly that the testator intended that the share of the devise held by the one dying should pass in severalty to the one, or to those, surviving as might be, and this construction when considered in the light of the statute leaves no doubt but these life tenants take as tenants in common.

[2] Now, having determined the nature of the tenancy created by the testator, we next, in order of sequence, consider the effect of the attempt of the testator to create an estate beyond two lives in being. Section 43 of the Real Property Law provides:

"Successive estates for life shall not be limited, except to persons in being at the creation thereof; and where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to those of the two persons first entitled thereto shall be void, and on the death of those persons, the remainder shall take effect, in the same manner as if no life estates had been created."

This provision of the statute is in harmony with the general rule which prescribes the period during which the power of alienation may be suspended, viz., two lives in being at the creation of the estate. The statute, however, does not avoid the whole limitation where more than two successive life estates are created. It allows the first two to take effect, avoiding those only which are in excess of that number. If the right of the remainderman is vested, and the right of possession only is postponed, the statute, in case of an attempted creation of two precedent estates for life, accelerates the period fixed by the will for the vesting of the remainder in possession and vests it immediately upon the termination of the two estates first created. In such case, the intention of the testator gives way to the positive provisions of the statute. The intention of the testator to create a third life estate, while defeated by the statute in that it accelerates the remainder, yet gives effect to such intention so far as may be, in that it allows the two first to stand.

[3] Neither the will nor the statute, however, in a case like the present, determines which of the two life estates shall follow the intention expressed by the testator and which shall be accelerated. That is determined only by the contingency which of the three, the widow, George, or Edward, shall first die. Such a contingency, however, is not violative of any statute. The section of the statute which limits the creation of successive life estates only provides that "all the life estates subsequent to those of the two persons first entitled thereto, shall be void." The statute does not limit the manner in which the two estates that may take shall be determined. That, therefore, in a case such as we have here, may be left to the contingency of which taker shall first die. Coster v. Lorillard, 14 Wend. 338. The three life tenants took the estate devised as tenants in common, each being vested in possession with a one-third interest with cross-remainders for life. This was manifestly the intention of the testator, and no reason exists why such intent should not be permitted to prevail.

Now, Eliza having died, the contingency as to which share shall be affected by the statute has been settled; but it is yet to be determined what shall be the future of such share.

[4] Section 43 of the statute provides that the remainder shall take effect in the manner as if no other life estates had been created. Here the gift in remainder is upon a contingency to be determined only on the death of the last surviving life tenant. The will reads:

"And at the survivor's decease, then I give * * * so much thereof as shall remain * * * to such of my grandchildren as shall then be living— I mean that would be my grandchildren if I were then living."

The grandchildren now living and parties to this action may not outlive the last surviving life tenant, whether they or any of them will ever take depends upon that contingency. The further contingency, to

complex the situation, is presented, that other grandchildren may be born intermediate the death of the second life taker and the son last surviving.

"It is no objection that a remainder is limited in favor of persons not in being when the limitation is created, provided that the contingency upon which the final vesting depends must happen and the persons entitled to take be ascertained within the permitted period for the vesting of estates." Hillan v. Iselin et al., 144 N. Y. 365, 39 N. E. 368.

[5] The statute (section 42 of the Real Property Law) provides that:

"The absolute power of alienation is suspended, when there are no persons in being by whom an absolute fee in possession can be conveyed. Every future estate shall be void in its creation, which shall suspend the absolute power of alienation, by any limitation or condition whatever, for a longer period than during the continuance of not more than two lives in being at the creation of the estate."

We may therefore have more than two lives in being in whom an estate may be vested, and yet, so long as they have an absolute power of conveying a fee in possession, it is not violative of the statute. Where there are living parties who have unitedly the entire right of ownership and can convey an absolute fee in possession, the statute can have no application, and we are not concerned as to the number of lives in being at the creation of the estate; but, if the absolute ownership is suspended for a greater period than two lives, there is a violation of the statute, and such attempted creation of estates is void.

[6] The share of Eliza, which passed to the son first dying, cannot be absolutely conveyed until it is determined in whom such share shall vest on the death of the last surviving son, because by the will it can only be determined then who will be grandchildren of the testator then living. As an absolute fee and dispossession of this share could not be made during the life of Eliza and that of the son first dying, the absolute ownership of that share which came from Eliza was suspended for two lives, and it is further suspended during the life of the surviving son because until his death it cannot be determined who will take that remainder coming from Eliza. Sawyer v. Cubby, 146 N. Y. 192, 40 N. E. 869; Williams v. Montgomery, 148 N. Y. 519–526, 43 N. E. 57.

A remainder contingent when the life estate commences and which remains so at the death of the second life tenant will not vest although no other life estate had been created. As the case now presents itself, it will be uncertain until the death of the two sons whether there will be other grandchildren of the testator born, who might take, if permitted to do so by law, on the death of the son last surviving. Consequently we have a suspension attempted by the will of the absolute power of alienation or the absolute ownership of the one-third, the widow's share as it now happens, of the property for a period longer than during the continuance of two lives in being at the death of the testator. Now, future estates created by will, to be valid must be limited, that in every possible contingency they will absolutely terminate within the period of two lives in being at the death of the testator, or they will be void. Haynes v. Sherman, 117 N. Y. 433, 22 N. E. 938.

It now only remains to apply more closely the principles formulated to test the validity of the clause of the will under consideration. The life estate of the widow, Eliza, on her death, passed in possession to the sons, George and Edward. With the death of one of the sons, that interest which he received from Eliza would not pass to the surviving son, as we have seen, because of the statutory inhibition against it, but to the remaindermen if they could be ascertained, and as they will not be and cannot be ascertainable at that time, that portion of the estate being the one-sixth must pass to the heirs at law of the testator when the event suggested shall occur.

If it should be held that, on the death of the second life tenant dying, the interest that came to him from the first life tenant dying should vest in the grandchildren then living, it would be substituting; another will for that of the testator, because he expressly provides that only grandchildren shall take who are living when the last of the three life tenants shall die.

[7] The question next presents itself whether, because of the vice pointed out in a part of the devise of the eighth clause, it destroys the entire attempted provision for the remaindermen. The life estates passing from Eliza to the second son dying and from the son first dying to the survivor, and by such survivor, as we have seen, does not offend against the provisions of the statute, because those estates are not to pass beyond two lives. The failure then is as to only a part of the limitation with an uncertainty only as to the part of the title which was unlawfully suspended, and this was ascertained within the period of a single life. Where a precedent estate is given to several persons as tenants in common, the remainders limited on a part of the tenants in common may fall without affecting the remainders limited upon the estates of the others. Hawley v. James, 16 Wend. 121; Fearne on Rem. 193. The unlawful suspension only affects the part of the share of the widow vested in possession of the son first dying; the remainder is not affected and will pass as provided by the will. The share so unlawfully suspended will therefore, on the death of the son first dying, pass to the heirs of the testator and not by the terms of the will.

[8] This leaves the ninth clause of the will for consideration. By this clause, there is a life estate to the widow and with remainder to the son Edward, if living; if not living, to testator's grandchildren named in the eighth clause. The only question here presented is whether the uncertainty as to the remaindermen before the widow's death defeats the apparent object of the testator to make certain that the property devised by this clause should pass in certain lines named by him. To answer this question, we have only to repeat in part what was said in construing the eighth clause. A remainder, as there stated, in a fee is not rendered invalid because it is limited in favor of persons not in being when the limitation is created or who are not ascertainable until the termination of a precedent estate, provided only that the contingency upon which the vesting of the remainder depends must happen within the period prescribed for the vesting of estates. Gilman v. Reddington, 24 N. Y. 9; Harriot v. Harriot, 25 App. Div. 245, 49 N. Y. Supp. 447. The limitation is only to the life estate of the widow,

and immediate on her death it will stand determined whether Edward or which of the other classes will take. The contingency is determined as to the remainder at the expiration of but one life estate, and this is not violative of the statute. On the death of the widow, there was a person or persons in being who can give complete title and this answers the statute. The ninth clause is therefore valid.

A decree may be submitted construing the will in accord with this opinion.