53 F.3d 874
 75 A.F.T.R.2d 95-1894, 63 USLW 2719,
95-1 USTC P 50,237
 UNITED STATES of America; Plaintiff-Appellee,
v.
Richard H. SINDEL; Sindel & Sindel, PC; Defendants-Appellants.
John Doe; Jane Doe; Intervenors.
National Association of Criminal Defense Lawyers; Missouri
Association of Criminal Defense Lawyers; Amici Curiae.
 Nos. 94-2683, 94-2684.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: Feb. 15, 1995.
Decided: April 28, 1995.
Rehearing Denied July 6, 1995.
 
 Charles E. Atwell, Kansas City, MO, argued (Ronald D. Lee and Cheryl A. Pilate, on the brief), for appellant.
 John A. Dudeck, Jr., Dept. of Justice, Washington, DC, argued (Gary R. Allen and Charles E. Brookhart, on the brief), for appellee.
 Before MCMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.
 MORRIS SHEPPARD ARNOLD, Circuit Judge.
 
 
 1
 Attorney Richard Sindel of Sindel & Sindel, P.C., appeals a district court order requiring him to disclose information about two clients, intervenors John Doe and Jane Doe, on Internal Revenue Service Form 8300. These forms, which are used to report cash transactions in excess of $10,000 pursuant to 26 U.S.C. Sec. 6050I, request the name, address, tax identification number, and other information about each payor and each person on whose behalf payment is made. Sindel argues that completion of the forms would violate his own ethical duties and the First, Fifth, and Sixth Amendment rights of his clients. After considering the circumstances surrounding each client, we affirm the district court order with respect to John Doe and reverse it with respect to Jane Doe.
 
 I.
 
 2
 During 1990 and 1991, Sindel received a cash payment of $53,160 for John Doe and two cash payments of $10,000 each for Jane Doe for legal services rendered. Sindel reported each of these transactions using the August, 1988, version of IRS Form 8300, but omitted any identifying information regarding the payors or the persons on whose behalf payments were made. In an attachment to each form, Sindel claimed that disclosure would "violate ethical duties owed said client, and constitutional and/or attorney-client privileges that the reporting attorney is entitled or required to invoke," and that the client had not authorized release of the information. At the request of the IRS, Sindel later withdrew the two forms reporting payments on behalf of Jane Doe and consolidated them using the January, 1990, version of Form 8300, again omitting any identifying information. This later version of Form 8300 asks the reporting party to check a box if the payment is a "suspicious transaction." The instructions accompanying the January, 1990, version of Form 8300 define a suspicious transaction as "[a] transaction in which it appears that a person is attempting to cause this report not to be filed or a false or incomplete report to be filed; or where there is an indication of possible illegal activity." Sindel left the box blank.
 
 
 3
 After filing these forms, Sindel was served with an IRS summons requesting the missing information. The government then brought an enforcement action, and the district court ordered Sindel to show cause why the summons should not be enforced. The district court divided the ensuing proceedings into two parts, one held in open court and the other an ex-parte hearing held in camera. During the in-camera portion of the proceedings, Sindel presented evidence regarding his clients' special circumstances. The district court ordered enforcement of the summons, but stayed its order pending this appeal.
 
 II.
 
 4
 In order, if possible, to avoid deciding constitutional questions not essential to disposition of the case, Harmon v. Brucker, 355 U.S. 579, 581, 78 S.Ct. 433, 435, 2 L.Ed.2d 503 (1958), we consider first Sindel's claims under the federal common law of attorney-client privilege and the Missouri Rules of Professional Conduct. Although the federal common law of attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal representation, Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), it ordinarily does not apply to client identity and fee information. In re Grand Jury Proceedings (85 Misc. 140), 791 F.2d 663, 665 (8th Cir.1986); In re Grand Jury Subpoenas (Anderson), 906 F.2d 1485, 1488 (10th Cir.1990). The various Circuit Courts have, however, identified certain circumstances under which the privilege protects even client identity and fee information. One court has categorized these overlapping "special-circumstance" exceptions as the legal advice exception, the last link exception, and the confidential communications exception. Anderson, 906 F.2d at 1488. The legal advice exception protects client identity and fee information when "there is a strong probability that disclosure would implicate the client in the very criminal activity for which legal advice was sought." Id. The last link exception, as its name implies, prevents disclosure of client identity and fee information when it would incriminate the client by providing the last link in an existing chain of evidence. Id. at 1489. The confidential communications exception, which we have recognized on another occasion, protects client identity and fee information "if, by revealing the information, the attorney would necessarily disclose confidential communications." 85 Misc. 140, 791 F.2d at 665; see Anderson, 906 F.2d at 1491. Our decision regarding Sindel's claim of attorney-client privilege therefore must rest upon a determination of whether the information requested by IRS Form 8300 is protected in this case by one of the special-circumstance exceptions. See United States v. Goldberger & Dubin, P.C., 935 F.2d 501, 505 (2nd Cir.1991) (acknowledging that special circumstances may render privileged the information sought by Form 8300); United States v. Leventhal, 961 F.2d 936, 940 (11th Cir.1992) (recognizing that Form 8300 may trigger an exception to the rules governing the attorney-client privilege); United States v. Gertner, 873 F.Supp. 729 (D.Mass.1995) (holding that under the special circumstances of the case, the information requested by Form 8300 was protected by the attorney-client privilege). After examining Sindel's in-camera testimony about his clients' special circumstances, we conclude that he could not release information about the payments on behalf of Jane Doe without revealing the substance of a confidential communication. We do not find any similar constraints upon the disclosure of information about the payments on behalf of John Doe.
 
 
 5
 The Missouri Rules of Professional Conduct appear on their face to extend somewhat broader protection to client identify and fee information than does the federal common law of attorney-client privilege. Rule 1.6 provides that a "lawyer shall not reveal information relating to representation of a client unless the client consents after consultation." Rules Governing the Mo. Bar and Judiciary 4, 1.6 (1986). Even assuming arguendo that Rule 1.6 would prohibit disclosure of the information required to complete an IRS Form 8300, Congress cannot have intended to allow local rules of professional ethics to carve out fifty different privileged exemptions to the reporting requirements of 26 U.S.C. Sec. 6050I. Thus the Missouri Rules of Professional Conduct do not expand the scope of the exemption beyond what is established by the federal common law of attorney-client privilege.
 
 III.
 
 6
 As we do not believe that the information regarding payments on behalf of John Doe is protected from disclosure to the IRS by the federal common law of attorney-client privilege or the Missouri Rules of Professional Conduct, we necessarily undertake a consideration of Sindel's constitutional claims.
 
 A.
 
 7
 Sindel first argues that application of 26 U.S.C. Sec. 6050I to an attorney violates the client's Sixth Amendment right to counsel by inhibiting the ability to retain counsel, discouraging communication between attorney and client, forcing the attorney to act as an agent for the government, and disqualifying counsel of choice. As the Second Circuit accurately points out in Goldberger & Dubin, 935 F.2d at 504, the statutory reporting requirements do not prevent a would-be client from hiring counsel. Not only are cash payments not automatically forfeit, but a client is also free to pay counsel in some other manner to avoid being reported to the IRS. Id., citing Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) and United States v. Monsanto, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (holding that seizure of assets which defendants could otherwise have used to pay their attorneys did not violate the Sixth Amendment). Similarly, a client is not prevented from communicating with an attorney at will merely because the attorney must report large cash transactions. By contrast, we recognize the serious Sixth Amendment implications of Sindel's claim that an attorney becomes a de facto agent for the government when compelled to offer an opinion as to whether a particular cash payment was a "suspicious transaction," a question added to the January, 1990, version of Form 8300. Sindel used this later version of Form 8300 to consolidate his reporting of the payments made on behalf of Jane Doe. Because we have already determined that the federal common law of attorney-client privilege excuses Sindel from reporting any additional information regarding the Jane Doe payments, however, the constitutionality of the January, 1990, version of Form 8300 is not at issue in this case. Sindel's speculative claim that the reporting requirements of 26 U.S.C. Sec. 6050I would disqualify counsel by allowing prosecutors to subpoena a reporting attorney to testify against a client is likewise not ripe for adjudication. There is thus no Sixth Amendment bar to enforcement of the IRS summons against Sindel.
 
 B.
 
 8
 Sindel next claims that requiring him to complete the Forms 8300 would violate his clients' Fifth Amendment privilege against self-incrimination. This guarantee, however, applies only to compulsion of the individual holding the privilege, not to other methods of obtaining potentially incriminating information. Couch v. United States, 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973). As compliance with the IRS summons would merely require disclosure of information which Sindel's clients have already given to him, their Fifth Amendment privilege is not implicated. Therefore, the Fifth Amendment does not prevent fulfillment of the reporting requirements of 26 U.S.C. Sec. 6050I.
 
 C.
 
 9
 Sindel's final constitutional claim is that completion of Form 8300 constitutes "compelled speech" and thus violates both his own and his clients' First Amendment rights. It is true that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." Wooley v. Maynard, 430 U.S. 705, 714, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977). A First Amendment protection against compelled speech, however, has been found only in the context of governmental compulsion to disseminate a particular political or ideological message. See West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (holding that a state may not compel schoolchildren to salute the flag); Miami Herald Publishing Company v. Tornillo, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974) (holding unconstitutional a state statute requiring newspapers to publish the replies of political candidates whom they had criticized); Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (holding that a state may not require a citizen to display the state motto on his license plate); Pacific Gas and Electric Company v. Public Utilities Commission of California, 475 U.S. 1, 106 S.Ct. 903, 89 L.Ed.2d 1 (1986) (holding that a state may not order utility company to distribute the literature of hostile groups with its own billing statements and newsletters). There is no right to refrain from speaking when "essential operations of government may require it for the preservation of an orderly society,--as in the case of compulsion to give evidence in court." West Virginia State Board of Education, 319 U.S. at 645, 63 S.Ct. at 1189 (Murphy, J., concurring). The IRS summons requires Sindel only to provide the government with information which his clients have given him voluntarily, not to disseminate publicly a message with which he disagrees. Therefore, the First Amendment protection against compelled speech does not prevent enforcement of the summons.
 
 IV.
 
 10
 For the foregoing reasons, we vacate the district court's order with respect to Jane Doe and affirm the order with respect to John Doe.