308 F.Supp.2d 946 (2004)
USA, Plaintiff,
v.
Philip A. KAISER, et al., Defendants.
No. 4:03MC00314.
United States District Court, E.D. Missouri, Eastern Division.
January 26, 2004.
*947 *948 Robert D. Metcalfe, Washington, DC, for Plaintiff.
David V. Capes, Sanford J. Boxerman, Capes and Sokol, St. Louis, MO, for Defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER
AUTREY, District Judge.
This matter is before the court on Petition by the United States of America to Enforce Internal Revenue Service Summonses. The matter was called for hearing on the petition on November 18, 2003. The hearing was concluded on November 19, 2003 and the matter was taken under submission by the court. For the reasons set forth below the Petition to Enforce Summonses is granted.

Facts and Background
The United States initiated this action on September 29, 2003 to obtain judicial enforcement of eight IRS summonses issued to the respondents, Philip A. Kaiser ("Kaiser") and Douglas M. Mueller ("Mueller") (collectively known as "the respondents") by IRS Revenue Agent Cheryl Kiger ("Agent Kiger") on March 6, 2003. Petition to Enforce Internal Revenue Service Summonses (# 1), ¶¶ 1 and 6; Tr. 22:25  24:10; Government Exhibits 1-8.
On September 29, 2003, an Order to Show Cause (Doc. # 3) was entered which required the respondents to appear and show cause why they should not be compelled to obey the IRS summonses issued to them. Agent Kiger and IRS Senior Attorney Thomas C. Pliske testified on behalf of petitioner, and respondent Kaiser testified on behalf of respondents. Government exhibits 1 through 19, and Respondents' exhibits A through R were received into evidence.
Agent Kiger is an IRS revenue agent who is authorized to issue and serve IRS summonses. She is conducting an investigation in order to determine whether the respondents organized or promoted abusive tax shelters through various entities, including (but not limited to) Jefferson Gage, LLC, and whether the respondents are liable for penalties under section 6700 of the Internal Revenue Code (26 U.S.C.). Tr. 18:22-19:10, 19:22-20:6, 21:7-18, 24:17-19, 34:16-36:2.
On February 3, 2003, Agent Kiger notified the respondents by certified mail that they were the subject of a section 6700 investigation. Tr. 20:7-25.
Agent Kiger was assigned to conduct the section 6700 investigation of the respondents after she conducted an income tax examination of two of the respondents' clients. She determined that those clients had improperly used a "charitable family limited partnership" to avoid paying federal income taxes. Kaiser had prepared the documents for the "charitable family limited partnership," and Mueller had prepared the clients' tax returns. At the conclusion of her examination of the tax returns filed by the respondents' clients, Agent Kiger determined that the charitable family limited partnership lacked economic substance, and proposed adjustments of more than $1 million against respondents' clients. Tr. 21:7-22:6, 86:8-87:4.
When Agent Kiger notified the respondents that they were the subject of a section *949 6700 investigation she informally requested that the respondents provide her with the documents listed on an "Information Document Request." The respondents refused to provide the requested documents. As a result Kiger informed them that she would issue summonses for the same information. Tr. 20:7-21:6, 22:7-24.
On March 6, 2003, Agent Kiger issued four IRS summonses to each of the respondents. On the same date, she personally served attested copies of those summonses on the respondents.[1] The summonses directed respondents to appear before Agent Kiger on March 17, 2003 and to provide the testimony and books, papers, records and other data demanded in said summonses. Tr. 30:16-23; Government ex. 1-8.
The IRS summonses represented by Government exhibits 1 through 4 were issued to Kaiser for the periods of 1998 to the present in the matters of: (1) The Kaiser Law Firm; (2) Jefferson Gage, LLC; (3) Parker Madison, LLC; and (4) Philip A. Kaiser. Government ex. 1-4. The IRS summonses represented by Government exhibits 5-8 were issued to Mueller for the periods of 1998 to the present in the matters of: (1) Mueller, Prost, Purk & Willbrand, P.C. (Mueller's CPA firm); (2) Jefferson Gage, LLC; (3) Parker Madison, LLC; and (4) Douglas M. Mueller. Government ex. 5-8.
Paragraph A of each of the summonses issued to the respondents in this case required the respondents to produce the following:
All manuals, operations handbooks, prospectuses, offering documents, or other documents which describe the plan, operations or structuring of any tax shelter plan or arrangement offered to investors or other participants, including but not limited to the following:
1. The RETIRA Plan.
2. The PIRAC Plan.
3. Charitable Trust Plus.
4. Stock Equity Loan 2002 Program.
5. Opportunity Shifting Limited Partnership.
6. Cross Over Limited Partnership.
7. Family Limited Partnership.
8. Philanthropic Limited Partnership.
9. Step Up Family Limited Partnership.
10. Private Deferred Offshore Annuity.
11. Personal Holding Company Bailout Program.
12. SUBSAP (Subchapter S Corporation Asset Protection Plan).
13. IRA Boost.
14. NQSO Freeze.
15. Home Security Trust.
16. Short Term Grantor Annuity Trust or Zero Out GRAT.
17. Sale of Family Limited Partnership Interest to an Intentionally Defective Grantor Trust.
18. Step Up Power of Appointment Trust.
19. Sale of Goodwill.
20. Acquisition Planning Tools.
Government ex. 1-8.
Agent Kiger testified that she discovered the internet website for "Jefferson Gage, LLC." The "tax planning ideas" sought in the attachments to the IRS summonses were taken from the Jefferson Gage, LLC[2] website, which identified Kaiser *950 and Mueller as its principals. Tr. 25:19-26:10, 34:16-36:2, Tr. (Vol.II) 14:12-15:24, Government ex. 11.
On March 17, 2003, the respondents did in fact appear before Agent Kiger at her office in Chesterfield, Missouri. Kaiser produced some materials that were responsive to the summonses, but Mueller did not. Tr. 30:16-31:2. Kaiser tendered to Agent Kiger a binder that was titled "Response to Form 2309 by Philip A. Kaiser, Esq., The Kaiser Law Firm, P.C., Jefferson Gage, LLC & Parker Madison, LLC." Tr. 31:2-18, and Government ex. 10. These materials included (1) a narrative authored by Kaiser and submitted in support of a finding that no Code Section 6700 violation had occurred; (2) specific "Response[s] to Form 2309" by Philip Kaiser, The Kaiser Law Firm, and Jefferson Gage, LLC and Parker Madison, LLC; and (3) written materials which described "The RETIRA Plan" (Government ex. 12), "Family Limited Partnerships: The Real Story" (Government ex. 13), "The SUBSAP Plan" presented by the Kaiser Law Firm (Government ex. 14), "The SUBSAP Plan" presented by Jefferson Gage, LLC (Government ex. 15), "Charitable Trust Plus" (Government ex. 16), "The PIRAC Plan" (Government ex. 17), and "The Stock Equity Loan 2002 Program" (Government ex. 18). Tr. 30:16-31:18, 32:15-33:7, 39:22-44:25, Tr. (Vol.II), 20:8-21:12, Government ex. 10, 12-18.
The "Response[s] to Form 2309" (a IRS Form 2039 is an IRS summons) revealed that Kaiser had prepared documents for his clients which corresponded to the "tax planning ideas" listed on the Jefferson Gage, LLC website and paragraph A of the attachments to the summonses. Government Ex. 1-8, 10-18.
The materials that Kaiser produced for Agent Kiger on the return date of the IRS summonses (March 17, 2003) were responsive to the information demanded in paragraphs A, B, D-F, J and K of the attachments to the IRS summonses. Tr. 27:2-11, Government ex. 1-8. However, the respondents failed or refused to produce the testimony and the books, papers, records and other documents described in paragraphs C, G, H, I, and L-N of the attachments to the IRS summonses.

Standard
District courts of the United States have subject matter jurisdiction, under sections 7402(b) and 7604(a) of the Internal Revenue Code (26 U.S.C.), to enforce summonses issued by the Internal Revenue Service. United States v. Bisceglia, 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975); United States v. First National Bank Through O'Hara, 727 F.2d 762, 763 (8th Cir.1984). Here, the United States seeks the judicial enforcement of the IRS summonses issued to the respondents by Agent Kiger on March 6, 2003 with respect to the testimony and the books, papers, records and other data described in paragraphs C, G-I, and L-N of the attachments to the summonses.
In order to obtain enforcement of a summons, the Government must make a showing that it has satisfied the requirements for enforcement set forth in United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), by demonstrating (1) that the investigation is being conducted for a legitimate purpose; (2) that the information sought is relevant to that purpose; (3) that the information is not already within the Government's possession; and (4) that the administrative *951 steps required by the Internal Revenue Code have been followed. Ibid.; United States v. Claes, 747 F.2d 491, 494 (8th Cir.1984); United States v. Lask, 703 F.2d at 297; United States v. Swanson, 772 F.2d 440, 440-441 (8th Cir.1985).
To meet its burden of establishing a prima facie case for the enforcement of a summons, the Government need make only a minimal showing that the above requirements have been met. United States v. Moon, 616 F.2d 1043, 1046 (8th Cir.1980); United States v. Abrahams, 905 F.2d 1276, 1280 (9th Cir.1990); United States v. Kis, 658 F.2d 526, 535-536 (7th Cir.1981). The Government typically meets that burden without a hearing, by averring in an affidavit or declaration by the agent who issued the summons that each of the Powell requirements has been satisfied. Alphin v. United States, 809 F.2d 236, 238 (4th Cir.1987); Liberty Financial Services v. United States, 778 F.2d 1390, 1392 (9th Cir.1985); United States v. Kis, 658 F.2d at 536-537; United States v. White, 853 F.2d 107, 111 (2d Cir.1988); United States v. Will, 671 F.2d 963, 966 (6th Cir.1982). The Declaration of IRS Revenue Agent Cheryl Kiger, together with Agent Kiger's testimony at the hearing in this case, has met the Government's "slight" burden of establishing that the summonses (Government ex. 1-8) were issued in good faith as part of the IRS investigation into respondents' activities. See United States v. Dynavac, Inc., 6 F.3d 1407, 1414 (9th Cir.1993)

Discussion
The United States has established a prima facie case for enforcement of the summonses issued to the respondents on March 6, 2003. The Declaration of IRS Revenue Agent Cheryl Kiger and Agent Kiger's testimony at the hearing clearly establish that these summonses were issued for a legitimate purpose, that is, to determine whether the respondents engaged in conduct subject to penalty under section 6700 of the Internal Revenue Code by organizing, promoting or selling abusive tax shelters. See United States v. Balanced Financial Mgmt., Inc., 769 F.2d 1440, 1442 (10th Cir.1985) (IRS summons to taxpayers for records to determine their liability for the section 6700 penalty); 26 U.S.C. § 7602(a) (empowering the Commissioner of Internal Revenue to summon books and records, and to take the testimony of any individual, for the purposes, inter alia, of "determining the liability of any person for any internal revenue tax.").
The information sought by the eight IRS summonses at issue is both material and necessary to the investigation undertaken by Agent Kiger into the respondents' liability, if any, for the section 6700 penalty. Based upon audits of two of respondents' clients (which resulted in the determination that the "charitable family limited partnership" promoted by the respondents lacked economic substance), the Internal Revenue Service obviously suspects that the respondents may have promoted or organized other abusive tax shelters for sale to the public. It would therefore, appear to be axiomatic that testimony and information relating to respondents' sales or promotion of tax shelters to other individuals is necessary in order to determine whether to examine the tax returns of other customers who purchased financial products from the respondents. Additionally, the desired information is also needed to determine whether it is appropriate to seek injunctive relief against respondents under section 7408 of the Internal Revenue Code. Thus, the information sought in the IRS summonses is relevant to the legitimate purpose of determining whether the respondents engaged in conduct which is subject to penalty under section 6700, whether section 6700 penalties should be assessed against them for promoting abusive *952 tax shelters, and whether injunctive relief is available against the respondents under section 7408.
The Internal Revenue Service has a portion of the records sought in the summonses issued to the respondents on March 6, 2003. The evidence disclosed that the respondents have turned over records which were demanded in paragraphs A, B, D-F, J and K of the attachments to the summonses in this case. Therefore, the United States seeks only to enforce the summonses as they relate to the testimony and books, papers, records, and other data demanded in paragraphs C, G-I and L-N. The Declaration of Agent Cheryl Kiger (filing # 1) and the hearing testimony of Agent Kiger have established that the Internal Revenue Service is not in possession of the records sought in paragraphs C, G-I, and L-N of the summonses issued to the respondents in this case. See Declaration of IRS Revenue Agent Cheryl Kiger, ¶¶ 11 and 13.
The Government has also demonstrated that all of the administrative steps required for the issuance of an IRS summons have been taken in this case. Agent Kiger testified that she signed the summonses, that they were countersigned by her Group Manager, and that they were properly served on the respondents on March 6, 2003.
Furthermore, the United States has established that the IRS summonses were issued to the respondents in good faith by demonstrating, through the testimony and Declaration of Agent Kiger, that (1) the IRS inquiries are being conducted for the legitimate purposes of determining the respondents' liability (if any) for section 6700 penalties and the appropriateness of injunctive relief under section 7408; (2) that the IRS inquiries are relevant to those legitimate purposes; (3) that the summoned testimony and books, papers, records and other data are not already in the possession of the IRS; and (4) that all administrative steps necessary for the issuance of the IRS summonses have been taken. The Government has made out a prima facie case for the enforcement of the eight summonses issued to the respondents. United States v. Powell, 379 U.S. at 57-58, 85 S.Ct. 248; United States v. LaSalle National Bank, 437 U.S. at 313-314, 98 S.Ct. 2357.
Once this requisite showing has been established, the summoned party bears the "heavy" burden of "disproving one of these elements or to demonstrate that judicial enforcement of the summons would otherwise constitute an abuse of the court's process." United States v. Claes, 747 F.2d at 494; United States v. Lask, 703 F.2d at 297; United States v. Abrahams, 905 F.2d at 1280. The summoned parties can rebut the Government's prima facie case "only by alleging `specific facts' in rebuttal." United States v. Insurance Consultants of Knox, Inc., 187 F.3d 755, 759 (7th Cir.1999), quoting Crystal v. United States, 172 F.3d 1141, 1144 (9th Cir.1999).
Respondents initially challenged the subject matter jurisdiction of this Court to entertain the Government's petition for enforcement of the IRS summonses under sections 7402(b) and 7604(a) of the Internal Revenue Code (26 U.S.C.) by claiming that the present summons enforcement action had not been authorized or requested by the Secretary of the Treasury.
On that matter Senior IRS attorney Thomas C. Pliske testified that while he was the Acting Associate Area Counsel on May 8, 2003, he sent a letter to the Department of Justice requesting the Assistant Attorney General of the Tax Division to institute proceedings in this Court to compel the respondents' compliance with the IRS summonses served on them on *953 March 6, 2003. Since the Acting Associate Area Counsel is a delegate of the Secretary of the Treasury, the Court concludes that this summons enforcement case was properly authorized and requested in accordance with section 7401 of the Internal Revenue Code. Tr. 135:25-138:5, Government ex. 19.
The respondents next claim that Agent Kiger's investigation is not being conducted for a legitimate purpose because the investigation was not purportedly initiated in accordance with the provisions of the Internal Revenue Manual (IRM). During the hearing, Agent Kiger testified that she was assigned by her group manager to conduct her section 6700 investigation into the respondents' activities after the investigation was approved by the IRS Lead Development Center. She made a referral to the Lead Development Center, which has primary responsibility for cases involving possible abusive tax shelter cases, after auditing two of the respondents' clients and disallowing their use of a "charitable family limited partnership" because it lacked economic substance. None of Agent Kiger's actions were shown to have violated any provision of the IRM, and the respondents' allegations to the contrary are rejected. Tr. 55:21-58:12, 108:14-111:23.
The respondents also claim that the IRS summonses do not describe the books, papers, records and other data to be produced with "reasonable certainty." The summonses in question here seek the production of records for the specific tax planning ideas and concepts that the respondents advertised on their internet website for Jefferson Gage, LLC. The records requested by the summonses are further limited to those that pertain to the taxable periods of 1998 to the present.
In his written response to the IRS summonses, Kaiser indicated which of the tax ideas and concepts he had used to prepare documents for his clients. On cross-examination, Kaiser identified the specific documents which pertained to the those tax planning ideas and concepts. For example, with respect to the "PIRAC" plan, Kaiser drafted articles of incorporation, bylaws, minutes, subscription agreements and stock certificates. Tr. 25:15-28:19.
It is clear, from the record in its entirety, that the respondents are cognizant of the precise documents and records that the IRS is seeking to obtain through the summonses. This Court concludes that the IRS summonses are definite in nature and limited in scope, and request only information that is relevant to Agent Kiger's section 6700 investigation. See United States v. Community Federal Savings & Loan Ass'n, 661 F.2d 694 (8th Cir.1981).
The respondents also resist enforcement of the summonses on the grounds that they seek information which is protected from disclosure by the attorney-client privilege. The attorney-client privilege, is construed narrowly in the context of an IRS investigation "given the `congressional policy choice in favor of disclosure of all information relevant to a legitimate IRS inquiry.'" Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir.2002), quoting United States v. Arthur Young & Co., 465 U.S. 805, 816, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984). Respondents suggest in their brief that it is the burden of the government to pierce the armor of attorney-client privilege. Respondents should note well, however, that it is the respondents (and not the Government) who have "the burden of establishing the existence of the attorney-client relationship and the confidential nature of the communication." In re Grand Jury Proceedings (Freeman), 708 F.2d 1571, 1575 (11th Cir.1983). Accord Bouschor v. United States, 316 F.2d 451, 456 (8th Cir.1963).
*954 The respondents' attempt to invoke the attorney-client privilege fails miserably for several reasons. First, it is well settled that generally "the identity of a client, or the fact that a given individual has become a client are matters which an attorney normally may not refuse to disclose." Tillotson v. Boughner, 350 F.2d 663, 666 (7th Cir.1965), quoting Colton v. United States, 306 F.2d 633, 637 (2d Cir.1962). Accord United States v. Sindel, 53 F.3d 874, 876 (8th Cir.1995) (attorney-client privilege ordinarily does not apply to client identity and fee information); In re Grand Jury Proceedings Subpoena to Testify to Wine, 841 F.2d 230, 233 n. 3 (8th Cir.1988) ("Absent special circumstances, client identities and fee arrangements are not confidential professional communications protected by the attorney-client privilege"); In re Grand Jury Proceedings (85 Misc. 140), 791 F.2d 663, 665 (8th Cir.1986).
This is because only those disclosures that are necessary to obtain informed legal advice and that would not be made without the privilege are protected by the privilege. Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). See Schwimmer v. United States, 232 F.2d 855 (8th Cir.), cert. den, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956). Peripheral matters pertaining to the relationships between respondents and their clients, such as client identities and fee information, are simply not protected by the privilege because that type of information was not communicated in confidence to the attorney for the purpose of securing legal advice.
At the hearing in the present case, Kaiser made no attempt to demonstrate that the summoned records were confidential communications which were arguably protected by the attorney-client privilege. Instead, Kaiser simply raised a blanket claim of privilege with respect to the books, papers, records and other data demanded in paragraphs C, G-I, and L-N of the attachments to the IRS summonses served on him on March 6, 2003. This alone is wantonly insufficient.
The attorney-client privilege never attached to the summoned books, papers, records and other data to prevent the disclosure of the identities of the respondents' clients, their fee arrangements, or the business documents which Kaiser prepared for his clients. Respondents have not established that the summoned materials constitute "confidential communications" which are worthy of the prophylactic insulation provided by the privilege.
The summoned records were used by Mueller to prepare federal tax returns which were subsequently filed with the IRS. United States v. Cote, 456 F.2d 142, 145 n. 3 (8th Cir.1972) ("In tax cases waiver is often not even an issue since the privilege is said not to attach to information which the taxpayer intends his attorney to report in the context of a tax return.")
The respondents have also argued that the enforcement of the summonses would constitute an abuse of this Court's process because (1) Agent Kiger previously participated in the examination of one of the respondent's clients, and that audit was subsequently resolved by a significant reduction in the tax deficiency proposed by Agent Kiger; and (2) Agent Kiger is purportedly summoning the respondents' records to put pressure on them to settle with the IRS in the cases which gave rise to the present investigation. The respondents' allegations in this regard fall far short of those in other cases where IRS summonses have been enforced notwithstanding, for example, a threat to shut down the taxpayer's business. Based upon the Court's opportunity to consider all of the testimony, evidence, and credibility of witnesses produced at trial, the respondents' claim that *955 enforcement of the summonses would constitute an abuse of this Court's process is rejected.
Lastly, the respondents assert that enforcement of the IRS summonses would be improper because the IRS has not demonstrated that they have, in fact, organized or promoted abusive tax shelters. The respondents, however, have placed the cart before the horse and ignored the instruction of United States v. Powell, supra. Powell explicitly rejected the notion that the Internal Revenue Service was required to demonstrate the existence of probable cause for its investigations which used the broad summons power given to the IRS by section 7602 of the Internal Revenue Code.
Powell suggests that the IRS need only demonstrate that its investigation is being conducted in good faith as a condition of obtaining judicial enforcement of a summons. Since the Government has established the Powell good faith criteria, and the respondents have been unable to rebut that showing or demonstrate that the enforcement of the summonses would constitute an abuse of this Court's process, the summonses will be enforced.
Accordingly,
IT IS HEREBY ORDERED that the respondents are to appear before Revenue Agent Cheryl Kiger or her designee and comply with the IRS summonses served upon them within twenty (20) days of this Order by producing the testimony and the books, papers, records, and other data demanded in paragraphs C, G through I, and L through N of the summonses, to the extent that the summoned items contain information which was the basis for the preparation and filing of tax returns.
NOTES
[1] The IRS summonses issued to the respondents in this case were received as Government exhibits 1 through 8. Tr. 22:25-24:23; Government ex. 1-8.
[2] Jefferson Gage, LLC was created by the respondents sometime in the late1990s. It is owned by Dreamscape, LLC (which is owned by Kaiser's wife and son) and New Frontier Holdings (which is owned by certain partners of Mueller, Prost, Purk and Willbrand, Mueller's accounting firm).

Tr. (Vol.II), 13:3-24.