# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-60854
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

January 24, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

LUTHER ARNOLD,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi

Before JOLLY, SMITH, and CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Luther Arnold appeals *pro se* the denial of his 28 U.S.C. § 2255 motion, claiming that the registration requirements of the Sex Offender Registration and Notification Act ("SORNA") compel his speech in violation of the First Amendment. We affirm.

No. 12-60854

I.

In 1994, Arnold pleaded guilty of rape, incest, and homosexual acts in Madison County, Tennessee. As a result of the convictions, he was required to register as a sex offender pursuant to SORNA.[1] In 2011, he moved from Marshall County, Mississippi, to Tennessee but did not (a) notify Marshall County of his move, (b) update his registration with Mississippi, or (c) register as a sex offender in Tennessee. Shortly thereafter, he was charged, and pleaded guilty of, failure to register as a sex offender in violation of 18 U.S.C. § 2250(a).[2]

Arnold did not file a direct appeal but collaterally challenged his sentence using § 2255.[3] We granted a certificate of appealability, allowing Arnold to argue on appeal that "SORNA is unconstitutional because the registration requirements violate his right to free speech . . . ."[4]

II.

We have not addressed whether SORNA's registration requirements violate the First Amendment's prohibition of compelled speech.[5] We therefore

---

[1] *See* 42 U.S.C. § 16913 (2012) ("A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.").

[2] 18 U.S.C. § 2250(a) (2012) ("Whoever—(1) is required to register under [SORNA]; (2)(A) is a sex offender as defined for the purposes of [SORNA] . . . ; or (B) travels in interstate or foreign commerce . . . ; and (3) knowingly fails to register or update a registration as required by [SORNA] shall be fined under this title or imprisoned not more than 10 years, or both.").

[3] 28 U.S.C. § 2255(a) (2012) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

[4] Because we granted the certificate of appealability only on the First Amendment issue, we do not need to address the other arguments Arnold raises.

[5] *Cf. Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 765 (5th Cir. 2008) ("The First Amendment protects compelled speech as well as compelled silence.").

No. 12-60854

begin by discussing *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943) and *Wooley v. Maynard*, 430 U.S. 705 (1977), the relevant Supreme Court precedent on compelled speech. We then turn to related circuit-court precedent.

In *Barnette*, a state statute required public-school students to participate in daily public ceremonies by honoring the flag with words and traditional salute gestures. The Court held that "a ceremony so touching matters of opinion and political attitude may [not] be imposed upon the individual by official authority under powers committed to any political organization under our Constitution." *Barnette*, 319 U.S. at 636. In explaining why the First Amendment prohibits a state actor from compelling such speech, the Court noted, "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Id.* at 642.

In *Maynard*, New Hampshire required all noncommercial vehicles to bear a license plate embossed with the state's motto: "Live Free or Die." *Maynard*, 430 U.S. at 707. Because that slogan conflicted with his faith, Maynard contended that the state law coerced him into "advertising a slogan which [he found] morally, ethically, religiously and politically abhorrent." *Id.* at 713.

The Court first emphasized its holding in *Barnette*, that the First Amendment protects the right to remain silent.[6] In particular, the Court

---

[6] *See Maynard*, 430 U.S. at 714 ("A system which secures the right to proselytize religious, political, and ideological causes must also guarantee the concomitant right to decline to foster such concepts. The right to speak and the right to refrain from speaking are complementary components of the broader concept of individual freedom of mind." (internal quotation marks and citations omitted)).

suggested that the state could violate that protection in two ways: (1) by forcing an individual, through his speech, to affirm a "religious, political [or] ideological cause[]" that the individual did not believe in; or (2) by forcing "an individual, as part of his daily life . . . to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable."[7]  Though recognizing that *Barnette* "involved a more serious infringement upon personal liberties than the passive act of carrying the state motto on a license plate," the Court held that New Hampshire could not constitutionally require citizens to display the state motto on their license plates.  *Id.* at 715.[8]

In regard to lower-court precedent, Arnold has also not identified any decisions striking a registration requirement as being compelled speech in violation of the First Amendment.  Although sex offenders have brought a myriad of challenges to registration requirements, it does not appear that any

---

[7] The Court further explained this concept of compelled speech as requiring the individual to be a "mobile billboard" for the state's message.  *See id.* at 715 ("New Hampshire's statute in effect requires that appellees use their private property as a 'mobile billboard' for the State's ideological message or suffer a penalty, as Maynard already has.").

[8] The Supreme Court has also discussed compelled speech in the context of commercial speech.  *See, e.g.*, *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 650 (1985) ("Appellant [] overlooks material differences between disclosure requirements and outright prohibitions on speech.  In requiring attorneys who advertise their willingness to represent clients on a contingent-fee basis to state that the client may have to bear certain expenses even if he loses, Ohio has not attempted to prevent attorneys from conveying information to the public; it has only required them to provide somewhat more information than they might otherwise be inclined to present.  We have, to be sure, held that in some instances compulsion to speak may be as violative of the First Amendment as prohibitions on speech . . . .  But the interests at stake in this case are not of the same order as those discussed in *Wooley*, *Tornillo*, and *Barnette*.  Ohio has not attempted to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." (internal quotation marks and citations omitted)).  *See generally* Jennifer M. Keighley, *Can You Handle the Truth? Compelled Commercial Speech and the First Amendment*, 15 U. PA. J. CONST. L. 539 (2012).  Those cases, however, have no bearing on the question before us.

No. 12-60854

court has squarely addressed this type of compelled-speech challenge.[9]

In *United States v. Sindel*, 53 F.3d 874 (8th Cir. 1995), albeit in a different context, the court rejected a claim that compelled disclosure of information on an IRS form was unlawful compelled speech:   "There is no right to refrain from speaking when 'essential operations of government require it for the preservation of an orderly society—as in the case of compulsion to give evidence in court.'" *Id.* at 878 (quoting *Barnette*, 319 U.S. at 645).

And in *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999), a sex offender challenged Tennessee's Sex Offender Registration and Monitoring Act. Although not bringing the compelled speech argument Arnold presses, Cutshall argued that the registration requirements violated his constitutional "right to privacy." *See id.* at 480.  The court rejected that theory, holding that "the Constitution does not provide Cutshall with a right to keep his registry information private." *Id.* at 481.

Arnold has not urged that SORNA either requires him (a) to affirm a religious, political, or ideological belief he disagrees with or (b) to be a moving billboard for a governmental ideological message.  In fact, it appears that Congress enacted SORNA as a means to protect the public from sex offenders by providing a uniform mechanism to identify those convicted of certain crimes.[10]

---

[9] *See generally* Alex B. Eyssen, *Does Community Notification for Sex Offenders Violate the Eighth Amendment's Prohibition Against Cruel and Unusual Punishment? A Focus on Vigilantism Resulting from "Megan's Law"*, 33 ST. MARY'S L.J. 101 (2001); Stephen R. McAllister, *"Neighbors Beware": The Constitutionality of State Sex Offender Registration and Community Notification Laws*, 29 TEX. TECH L. REV. 97 (1998); Robin Morse, *Federalism Challenges to the Adam Walsh Act*, 89 B.U. L. REV. 1753 (2009).

[10] *See* Applicability of the Sex Offender Registration and Notification Act, 28 C.F.R. § 72 (2007) ("The SORNA reforms are generally designed to strengthen and increase the effectiveness of sex offender registration and notification for the protection of the public, and to eliminate potential gaps and loopholes under the pre-existing standards by means of which sex offenders could attempt to evade registration requirements or the consequences of registration violations.").

*Barnette* and *Maynard* do not therefore require us to conclude that the government has unlawfully compelled Arnold's speech.

Our limited sister-court precedent further supports this view. The logic of *Sindel* extends to the present case: When the government, to protect the public, requires sex offenders to register their residence, it conducts an "essential operation[] of [the] government," just as it does when it requires individuals to disclose information for tax collection. And as *Cutshall* notes, the Constitution does not provide Arnold "with a right to keep his registry information private."

The judgment based on the order denying Arnold's § 2255 motion is AFFIRMED. Arnold's motion for appointment of counsel is DENIED.