IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 18, 2008

Charles R. Fulbruge III
Clerk

No. 07-10226

SUSAN B. HERSH

Plaintiff-Appellee-Cross-Appellant

v.

UNITED STATES OF AMERICA, by and through Michael Mukasey in his
capacity as Attorney General of the United States

Defendant-Appellant-Cross-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before GARWOOD, CLEMENT, and ELROD, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant-cross-appellee, the United States, by and through
Attorney General Michael Mukasey, appeals the decision of the United States
District Court for the Northern District of Texas holding a recently enacted
provision of the Bankruptcy Code, 11 U.S.C. § 526(a)(4), facially
unconstitutional. See Hersh v. United States, 347 B.R. 19 (N.D. Tex. 2006).
Plaintiff-appellee-cross-appellant, Susan B. Hersh, cross-appeals the district
court's holding that attorneys qualify as "debt relief agencies" under 11 U.S.C.
§ 101(12A), and that 11 U.S.C. § 527(b) does not violate the First Amendment.
For the reasons stated below, we affirm the district court's holdings that

attorneys qualify as debt relief agencies and that 11 U.S.C. § 527(b) is constitutional, but reverse the court's judgment as far as it holds 11 U.S.C. § 526(a)(4) facially unconstitutional.

FACTS AND PROCEEDINGS BELOW

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act (the BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (2005). The BAPCPA is a "comprehensive package of reform measures" designed "to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and [to] ensure that the system is fair for both debtors and creditors." H.R. REP. NO. 109-31(I), 109th Cong. 1st Sess. pt. 1, at 2 (2005), reprinted in 2005 U.S.C.C.A.N. Vol. 4 at 88, 89 [hereinafter HOUSE REPORT]. The act contains provisions that apply to "debt relief agencies" – defined, as we hold, to include attorneys – that counsel consumer debtors, and regulate the manner in which they provide services to their clients. See 11 U.S.C. §§ 526-528.

Hersh is an attorney who represents consumer debtors in bankruptcy proceedings. For nineteen years, she has counseled her clients for a fee regarding their eligibility for filing for bankruptcy, the acquisition and disposition of property, and other legal rights and responsibilities relating to financial difficulties. Soon after the BAPCPA took effect, on November 28, 2005, Hersh filed this suit against the United States, then United States Attorney General Alberto Gonzales,[1] the State of Texas, and Texas Attorney General Greg Abbot. The State of Texas and Greg Abbott did not in any way appear and were not served with process and accordingly were dismissed from the case by

---

[1] Michael Mukasey became Attorney General on November 9, 2007. Under Federal Rule of Appellate Procedure 43(c)(2), when a public officer party to an appeal in an official capacity ceases to hold office, his successor is automatically substituted as a party. Proceedings that follow the substitution are made in the name of the substituted party, here Michael Mukasey.

the district court, so the only named defendants below who are parties to this appeal are the United States and United States Attorney General Michael Mukasey (collectively, the Government).[2]

In her original complaint, Hersh sought declaratory and injunctive relief to prohibit the Government from enforcing 11 U.S.C. §§ 526,[3] 527, and 528. She then amended her complaint to allege that attorneys do not qualify as "debt relief agencies" under the Bankruptcy Code. Hersh argued that sections 526(a)(4) and 527(b) violate the First Amendment right to free speech and her clients' Fifth Amendment right to counsel in a civil case.[4] In this appeal, Hersh challenges the applicability of the BAPCPA to bankruptcy attorneys by arguing that attorneys do not qualify as "debt relief agencies" as that term is defined in the act. She also argues that 11 U.S.C. §§ 526(a)(4) and 527(b) are unconstitutional in violation of the First Amendment.

Sections 526(a)(4) and 527(b) govern the conduct of "debt relief agencies." Hersh argues that these statutes should not apply to her because, as an

---

[2] In its Final Judgment of December 15, 2006, the district court stated that "unless Plaintiff Hersh shows good cause within thirty (30) days of the date of this Order for her failure to effect service on Defendant State of Texas, the Court will dismiss her claims against that defendant without prejudice." There is no indication in the record or briefs that Hersh ever submitted such a statement of good cause. Thus, we presume that Hersh's claims against the State of Texas and the Attorney General have been dismissed, and neither is a party to this appeal.

[3] Though Hersh's original and first amended complaints do not mention 11 U.S.C. § 526, both Hersh and the Government argued the constitutionality of section 526 extensively in proceedings below. See Hersh, 347 B.R. at 21 n.1. Thus, the district court addressed the constitutionality of section 526(a)(4) in its Memorandum Opinion and Order of July 26, 2006, and granted Hersh leave to amend her complaint to include an express claim for relief that section 526(a)(4) violates the First Amendment. Hersh then asserted in her Second Amended Complaint claims pertaining to § 526(a)(4). After this, she filed a motion for summary judgment on the issue of the constitutionality of § 526(a)(4) on October 24, 2006, which the district court granted in an order dated December 15, 2006.

[4] She also made claims regarding the constitutionality of § 528, which were dismissed by the district court and have not been raised on appeal. Hersh, 347 B.R. at 22 n2.

attorney, she does not qualify as a debt relief agency. "Debt relief agency" is defined in the BAPCPA as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110 . . . ." 11 U.S.C. § 101(12A). An "assisted person" is "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $164,250." Id. § 101(3).

In enacting the BAPCPA, Congress responded to evidence that attorneys and other bankruptcy professionals often played a role in abusing the bankruptcy system. See HOUSE REPORT at 5. Section 526(a)(4) is meant to curb this abuse by prohibiting debt relief agencies from advising assisted persons to incur debt "in contemplation of" bankruptcy or to incur debt to pay attorney or bankruptcy petition preparer fees. Hersh contends that section 526(a)(4) is facially unconstitutional in violation of the First Amendment because it impairs her right to provide legal advice to her clients, and chills and punishes speech that is fundamental to the attorney-client relationship. She asserts that she intends to engage in speech that violates this statute by advising her clients to incur debt in contemplation of bankruptcy when doing so would be in good faith and not abusive of the bankruptcy system.

Section 527(b) was enacted with the intention of providing debtors who are thinking about filing for bankruptcy with certain basic information about the bankruptcy system. It requires debt relief agencies to disclose specific basic information about bankruptcy to assisted persons whom they are counseling through the bankruptcy process. Hersh argues on appeal that section 527(b) violates the First Amendment by compelling her to provide factual information to her clients that is false and misleading, even when it is not pertinent to her client.

Hersh does not claim that the government or any individual debtor (or any other person or organization whatever) has threatened to enforce either section 526 or 527 against her on any occasion. She does not assert that the government or any official has issued any bulletin or statement (or made any threat to anyone) indicating that it will in any way punish (or take any adverse action against) her or any other debt relief agency in her position if she or they take the actions that she alleges she plans to take in her legal practice. She simply conclusorily asserts that if she violates section 526(a)(4), she faces a "threat of civil punishment" for advising her client to take legitimate actions that are prohibited by the statute, and that the statute of itself has a "chilling effect" on her communications with her clients. She also contends that the civil penalties for violating sections 526(a)(4) and 527(b) "deter[] or chill[] the exercise of free speech rights and cause[] continuing harm or a real and immediate threat of future injury." See Sec'y of State v. Joseph H. Munson Co., 104 S.Ct. 2839, 2847 (1984) ("[W]hen there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.").

After Hersh filed suit against the Government on November 28, 2005, the Government responded to Hersh's complaints by filing a motion to dismiss all of Hersh's claims under Federal Rule of Civil Procedure 12(b)(6) on February 2, 2006. On July 26, 2006, the district court issued a Memorandum Opinion and Order in response to the Government's Motion to Dismiss Hersh's claim. Hersh, 347 B.R. 19. It held that section 526(a)(4) is facially unconstitutional in violation of the First Amendment, but granted the Government's motion to dismiss for all of Hersh's other claims. Id. at 21. It dismissed Hersh's claim that attorneys advising clients on bankruptcy issues are not "debt relief agencies" as defined in 11 U.S.C. § 101(12A) because the plain meaning of the statute indicates that the term includes bankruptcy attorneys. Id. at 22-23. It held that section 526(a)(4)

violates the First Amendment because it "imposes limitations on speech beyond what is 'narrow and necessary,'" and invited Hersh to move for summary judgment on that claim once she amended her complaint to assert it explicitly. Id. at 25, 28; see also note 3, supra. It dismissed Hersh's challenge to section 527(b) because the statute "advances a sufficiently compelling government interest and does not unduly burden either the attorney-client relationship or the ability of a client to seek bankruptcy." Hersh, 347 B.R. at 27. Finally, the district court held that Hersh does not have standing to assert her Fifth Amendment claims. Id. at 28.

After the district court issued this opinion, Hersh filed a motion for summary judgment regarding her section 526(a)(4) claim, which the district court granted on December 15, 2006. It ordered that "Hersh have declaratory judgment that 11 U.S.C. § 526(a)(4) violates the First Amendment." It also ordered that "Defendant United States, its agents, and all people acting in active concert with it are permanently enjoined from enforcement of 11 U.S.C. § 526(a)(4)."

The Government timely appealed the district court's judgment that section 526(a)(4) violates the First Amendment, and Hersh thereafter timely cross-appealed the court's holdings that attorneys qualify as "debt relief agencies" under section 101(12A) and that section 527(b) does not violate the First Amendment.

## DISCUSSION

We limit our discussion to the issues raised on appeal: whether attorneys qualify as "debt relief agencies" under 11 U.S.C. § 101(12A); whether 11 U.S.C. § 526(a)(4) is wholly invalid as a facially unconstitutional violation of the First Amendment; and whether 11 U.S.C. § 527(b) unconstitutionally compels speech in violation of the First Amendment. For the reasons stated below, we affirm the judgment of the district court insofar as far as it holds that attorneys are debt

relief agencies and that section 527(b) does not violate the First Amendment. We reverse the judgment of the district court on Hersh's section 526(a)(4) claim, and hold that section 526(a)(4) is not facially unconstitutional.

I.    Whether attorneys are "debt relief agencies" under 11 U.S.C. § 101(12A)

Hersh argues that the district court erred in holding that attorneys may qualify as "debt relief agencies" under 11 U.S.C. § 101(12A). This is important because a debt relief agency must comply with the terms of certain provisions of the Bankruptcy Code such as those here at issue, sections 526 and 527. The district court granted the Government's motion to dismiss Hersh's claim that the term "debt relief agency" does not include bankruptcy attorneys. Hersh, 347 B.R. at 23.

The only federal court of appeals to have addressed that issue, namely the Eighth Circuit in its September 4, 2008 decision in Milavetz, Gallop & Milavetz, P.A., et al. v. United States, 541 F.3d 785 (8th Cir. 2008) (hereafter "Milavetz"), has held that "attorneys that provide 'bankruptcy assistance' to 'assisted persons' are 'debt relief agencies' as that term is defined by the Code." Id. at 792.[5] We agree with that holding.[6]

---

[5] This issue also has been addressed by a handful of federal district courts, and there has been no consensus regarding whether attorneys should be considered "debt relief agencies." See Olsen v. Gonzales, 350 B.R. 906, 912 (D. Or. 2006), aff'd on reconsideration, 368 B.R. 886 (D. Or. 2007) ("[I]t is the plain language of the Act that leads to the conclusion that attorneys are to be included in the definition of 'debt relief agency.'"); In re Reyes, 361 B.R. 276, 280 (Bankr. S.D. Fla. 2007) ("[T]he Court does not believe Congress intended the scope of [11 U.S.C. § 101(12A)] to include attorneys."); In re Attorneys at Law and Debt Relief Agencies, 332 B.R. 66, 71 (Bankr. S.D. Ga. 2005) (holding that attorneys who are members of the bar of the Bankruptcy Court for the Southern District of Georgia and those admitted pro hac vice are not "debt relief agencies" under BAPCPA as long as their activities consist of practicing law, and do not constitute a separate commercial enterprise).

[6] The Milavetz panel was unanimous on that issue (and also in its upholding of 11 U.S.C. §§ 528(a)(4) and 528(b)(2), which sections are not at issue on this appeal, see note 4, supra). The Milavetz panel was divided on the issue of the constitutionality of § 526(a)(4); as to that issue we agree with Judge Colloton's dissenting opinion, as explained below.

"Debt relief agency" is defined by 11 U.S.C. § 101(12A) as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110 . . . ."[7] "Bankruptcy assistance" is defined as:

> "any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title." 11 U.S.C. § 101(4A) (emphasis added).

The district court correctly concluded that under the plain language of 11 U.S.C. § 101(12A), attorneys qualify as "debt relief agencies." Although the definition does not explicitly include attorneys, it also does not exclude them in the list of exclusions provided after the definition. See note 7, supra. More importantly, "debt relief agency" is broadly defined as "any person who provides any bankruptcy assistance to an assisted person . . . ." 11 U.S.C. § 101(12A). "Bankruptcy assistance" is defined to include "providing legal representation with respect to a case or proceeding under" the Bankruptcy Code. Id. § 101(4A) (emphasis added). Thus, a debt relief agency includes any person who provides

---

[7] The statute goes on to list five exceptions ("but does not include") to the definition of "debt relief agency":

"(A) any person who is an officer, director, employee, or agent of a person who provides such assistance or of the bankruptcy petition preparer;

(B) a nonprofit organization that is exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986;

(C) a creditor of such assisted person, to the extent that the creditor is assisting such assisted person to restructure any debt owed by such assisted person to the creditor;

(D) a depository institution (as defined in section 3 of the Federal Deposit Insurance Act) or any Federal credit union or State credit union (as those terms are defined in section 101 of the Federal Credit Union Act), or any affiliate or subsidiary of such depository institution or credit union; or

(E) an author, publisher, distributor, or seller of works subject to copyright protection under title 17, when acting in such capacity." 11 U.S.C. § 101(12A).

legal representation in a bankruptcy proceeding to an assisted person. As only attorneys can provide legal representation, they are necessarily included in the definition of "debt relief agency."

Furthermore, as the district court observed, the legislative history of the BAPCPA indicates that Congress intended the act to apply to attorneys as the House Report for the BAPCPA refers to attorneys multiple times. See, e.g. HOUSE REPORT at 5 ("A civil enforcement initiative . . . has 'consistently identified' such problems as 'debtor misconduct and abuse, misconduct by attorneys and other professionals.'"). Therefore, the district court properly granted the Government's motion to dismiss Hersh's motion for declaratory judgment on this issue.

Hersh argues that this court should apply the doctrine of constitutional avoidance to eliminate the need to determine the constitutionality of 11 U.S.C. §§ 526(a)(4) and 527(b) in this case by holding that the term "debt relief agency" does not apply to attorneys. However, Hersh's arguments do not overcome the referenced evident congressional intent and the plain language of the statute.

First, Hersh suggests that because the definition of "debt relief agency" does not explicitly include attorneys, they are necessarily excluded from the term. However, because the definition, when read in conjunction with the definition of "bankruptcy assistance," clearly and affirmatively includes attorneys, an exclusion for attorneys should not be implied. This is especially so because the section 101(12A) definition is simply a general definition without any specific inclusions, but with five specific exclusions (none of which mentions or is claimed to embrace attorneys).

Next, Hersh argues that section 527(b) requires debt relief agencies to inform assisted persons that they have the right to hire an attorney or represent themselves, which would not be necessary if an attorney was a debt relief agency. However, debt relief agencies are not limited to attorneys and section

9

527(b) specifically indicates that this advice is only necessary "to the extent applicable." Thus, an attorney acting as a debt relief agency would not be required to provide her clients with this advice.

Third, Hersh notes that her clients include creditors and others who qualify as "assisted persons," but seek legal advice for bankruptcy-related matters unrelated to their own bankruptcy filings. She suggests that if attorneys are not omitted from the definition of debt relief agency, they must abide by the provisions that apply to debt relief agencies even when they are not advising debtors. The definition of "assisted person" under the BAPCPA does not explicitly indicate that only those seeking to file for or inquire about entering bankruptcy qualify as assisted persons. See 11 U.S.C. § 101(3) (An "assisted person" is "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $164,250."). However, if Hersh is counseling a client who is a creditor or any other client who qualifies as an "assisted person" but who is not seeking legal advice related to the client's own bankruptcy, Hersh would not be in danger of violating section 526(a)(4) as she would not advise that client to incur more debt in contemplation of bankruptcy (precluded by section 526(a)(4)) because that client would not be filing for bankruptcy. She also would not need to provide that client with the information required by section 527(b) because that information only must be provided "to the extent applicable," and would only apply to debtors contemplating their own bankruptcy. Thus, Hersh has not shown that attorneys must abide by the BAPCPA even when they are not counseling debtors. Furthermore, she does not explain why this argument does not apply to any debt relief agency, so it does not seem to support her position that attorneys should be excluded from the definition.

Finally, Hersh suggests that because the BAPCPA regulates the conduct of debt relief agencies, if attorneys are held to be debt relief agencies, states

would be deprived of their ability to determine and enforce qualifications for legal practice, which would infringe on the states' roll in regulating attorneys. In support of this argument, she cites 11 U.S.C. § 526(d)(2)(A), which states that nothing in section 526, 527, and 528 shall "be deemed to limit or curtail the authority or ability . . . of a State or subdivision or instrumentality thereof, to determine and enforce qualifications for the practice of law under the laws of that State." Treating attorneys as debt relief agencies will not deprive states of the ability to regulate their own lawyers. It is clear that Congress can regulate the conduct of attorneys practicing in federal courts and in bankruptcy proceedings without impinging on states' rights. See, e.g., Rule 11, FED. R. CIV. P., and Rule 9011, FED. R. BANKR. P.

For the reasons stated, we agree with the Eighth Circuit's unanimous opinion in Milavetz on this issue and we hold that the district court properly concluded that, under the plain language of the section 101(12A) definition, an attorney providing, "in return for the payment of money or other valuable consideration," "bankruptcy assistance," as defined in section 101(4A), to an "assisted person," as defined in section 101(3), is a "debt relief agency" for purposes of the BAPCPA.

II. Whether 11 U.S.C. § 526(a)(4) is Facially Unconstitutional in Violation of the First Amendment

The Government argues that the district court erred in holding that section 526(a)(4) is wholly invalid as a facially unconstitutional violation of the First Amendment.

Section 526(a)(4) provides that

"(a) A debt relief agency shall not –

. . .

(4) advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer fee

or charge for services performed as part of preparing for or representing a debtor in a case under this title."

As above noted, the only federal appellate court to have addressed section 526(a)(4) is the Eighth Circuit in Milavetz where the panel majority held "that § 526(a)(4) is substantially overbroad, and unconstitutional as applied to attorneys who provide bankruptcy assistance to assisted persons, as those terms are defined in the Code." 541 F.3d at 794 (footnote omitted). The panel majority there reasoned that "§ 526(a)(4) prohibits attorneys . . . from advising any assisted person to incur any additional debt in contemplation of bankruptcy; this prohibition would include advice constituting prudent bankruptcy planning that is not an attempt to circumvent, abuse, or undermine the bankruptcy laws," and that thus "[s]ection 526(a)(4), as written, prevents attorneys from fulfilling their duty to clients to give them appropriate and beneficial advice not otherwise prohibited . . . ." Id. at 793.[8] Judge Colloton dissented, on the ground that the court, under authorities such as Boos v. Barry, 108 S.Ct. 1157 (1988), should have adopted a narrowing construction of "in contemplation of" bankruptcy in section 526(a)(4) to mean "with the intent to abuse the protections of the bankruptcy system," and that as so construed section 526(a)(4) was not overbroad. Milavetz, 541 F.3d at 798-99 (Colloton, J., dissenting).

The district court here held that section 526(a)(4) unconstitutionally restricts Hersh's speech. Hersh, 347 Bankr. at 25. In proceedings below, the parties disputed whether strict scrutiny or a more lenient standard set forth in Gentile v. State Bar of Nevada, 111 S.Ct. 2720, 2745 (1991) should apply in

---

[8] Several district courts that have addressed the constitutionality of § 526(a)(4) have also determined that the statute violates the First Amendment. See Zelotes v. Adams, 363 B.R. 660, 667 (D. Conn. 2007) ("Because § 526(a)(4) is not sufficiently 'narrowly tailored to achieve the desired objective,' it is unconstitutional as applied to bankruptcy attorneys."); In re Reyes, 361 B.R. at 279 ("This court . . . holds 11 U.S.C. §§ 526, 527, and 528 are unconstitutional as applied to attorneys."); Olsen, 350 B.R. at 916 (following the reasoning of Hersh to hold that § 526(a)(4) is unconstitutional in violation of the First Amendment).

determining the statute's constitutionality. Hersh, 347 B.R. at 23-24. Because the district court held that section 526(a)(4) does not survive scrutiny under the more lenient standard, it did not decide which level of scrutiny should apply. Id. However, in a footnote, the court held in the alternative that because section 526(a)(4) does not purport to be an ethical standard, which the district court concluded would render it subject to the more lenient Gentile test, strict scrutiny should apply. Id. at 24 n.8. It noted that the statute fails under the strict scrutiny test for the same reasons that it fails the more lenient test. Id.

The district court noted that section 526(a)(4) was meant to end manipulation of the bankruptcy system, but that it did not close loopholes or penalize people who take on debt before filing for bankruptcy. Id. at 24. It suggested that taking on additional debt "in contemplation" of bankruptcy is not necessarily abusive of the bankruptcy system. Id. In some cases taking on additional debt will be the most financially prudent option for the debtor, such as when a debtor "(1) refinanc[es] at a lower rate to reduce payments and forestall or even prevent entering bankruptcy, or (2) tak[es] on secured debt such as [a] loan on an automobile that would survive bankruptcy and also enable the debtor to continue to get to work and make payments." Id.[9] Thus, the court concluded the statute is over inclusive. Id. at 25. Therefore, the court held that the statute is facially unconstitutional on overbreadth grounds, and, thus, completely invalidated the law. Id.

A. Doctrine of Constitutional Avoidance

The parties dispute whether the district court properly interpreted section 526(a)(4) to prohibit attorneys from advising clients to incur debt on the eve of bankruptcy when doing so would be legal, not abusive of the bankruptcy system,

---

[9] These are essentially the same examples as those cited by the Milavetz majority. 541 F.3d at 793-94. The government argues that § 526(a)(4) does not reach these nonabusive situations.

and the best option for the debtor. We hold the doctrine of constitutional avoidance should be applied to section 526(a)(4) to avoid any of the potential constitutional problems with this statute that have been raised by Hersh.

Under the doctrine of constitutional avoidance, "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 108 S.Ct. 1392, 1397 (1988)). See also Zadvydas v. Davis, 121 S.Ct. 2491, 2498 (2001) ("'[I]t is a cardinal principle' of statutory interpretation . . . that when an Act of Congress raises 'a serious doubt' as to its constitutionality, 'this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (quoting Crowell v. Benson, 52 S.Ct. 285, 296 (1932). Constitutional avoidance is a "cardinal principal" of constitutional law that "has for so long been applied by [the Supreme Court] that is it beyond debate." DeBartolo, 108 S.Ct. at 1397.

The Government argues that under the doctrine of constitutional avoidance, the portion of section 526(a)(4) that states that a debt relief agency shall not "advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title" should be interpreted narrowly to apply only to situations in which incurring debt just before bankruptcy would be an abuse of the bankruptcy system. However, Hersh, on the other hand, argues that the plain language of the statute clearly prohibits attorneys from advising clients in any situation to incur any debt for any purpose when intending, or considering whether to, file bankruptcy, even when doing so would not be an abuse of the bankruptcy system.

If interpreted literally and broadly, section 526(a)(4) would raise serious constitutional problems because, as Hersh suggests, it would restrict some

14

speech that is protected by the First Amendment. The statute does not expressly qualify its restriction on advice to situations in which incurring more debt would be an abuse of the bankruptcy system. Thus, if interpreted literally, section 526(a)(4) creates a blanket restriction on attorneys advising clients to incur any debt when intending, or contemplating whether to, file for bankruptcy under any circumstances. It would prohibit some attorney advice that would not be abusive to the bankruptcy system, harmful to creditors, or harmful to debtors.[10] Thus, if interpreted literally, section 526(a)(4) may apply to speech that is protected by the First Amendment.

However, Hersh does not dispute that section 526(a)(4), even when read literally, does prohibit some speech that Congress can regulate without violating the First Amendment. The "principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." Marrama v. Citizens Bank of Massachusetts, 127 S.Ct. 1105, 1107 (2007) (internal citation omitted). By incurring debt before bankruptcy without intending to repay the debt, a debtor can cost creditors significant amounts of money. A debtor may also disqualify himself from obtaining bankruptcy relief. See id. at 1112 (holding that a debtor cannot automatically convert his bankruptcy from Chapter 7 to Chapter 13 under section 706(a) if he acts in bad faith). Thus, Congress has an

---

[10] Hersh provides some examples of when her clients assertedly should be encouraged to incur new secured debt before filing for bankruptcy. First, a client may be able to obtain better secured loan terms prior to filing. It may be appropriate to incur debt such as a home equity based line of credit before filing for bankruptcy because the terms of the credit may not be available at all after a bankruptcy filing. Furthermore, it might be advisable for a client to finance a new vehicle while his credit ratings are intact before filing for bankruptcy so that he will be able to commute to work to pay off his debts. It may also be advisable for a couple planning to divorce to have one spouse accelerate efforts to secure a mortgage or lease before filing for bankruptcy if the mortgage or lease would not be available immediately after bankruptcy is filed. Finally, it might be advisable for a person to finance education through non-dischargeable educational loans before filing for bankruptcy if she could not do so after filing. The government generally takes the position that in nonabusive situations of this kind § 526(a)(4) does not preclude advice to incur the debt.

interest in preventing abuse of the bankruptcy system by both the debtors who incur debts just before filing for bankruptcy and by the people who advise them to do so. A debtor who incurs debt before bankruptcy in order to abuse the system is not one of the "honest but unfortunate" debtors that the bankruptcy system is designed to protect. Id. at 1107.

Furthermore, when a debtor incurs debt in contemplation of bankruptcy with no intention of repaying his debts or with the intention to otherwise manipulate the bankruptcy system, he may well be committing a fraudulent act that may violate federal law. See 11 U.S.C. § 523(a)(2);[11] 18 U.S.C. § 152(2) ("A person who . . . knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11 . . . shall be fined under this title, imprisoned not more than 5 years, or both."); Id. at § 157.[12] See also Attorney Grievance Comm'n of Maryland v. Culver, 849 A.2d 423, 434 (Md. 2004) ("[b]y advising his client to obtain loans with the intention of having the debts

---

[11] 11 U.S.C. § 523(a)(2) states:
"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition".

[12] 18 U.S.C. § 157 states:
"A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—
(1) files a petition under title 11, including a fraudulent involuntary bankruptcy petition under section 303 of such title;
(2) files a document in a proceeding under title 11, including a fraudulent involuntary bankruptcy petition under section 303 of such title; or
(3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, including a fraudulent involuntary bankruptcy petition under section 303 of such title, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title,
shall be fined under this title, imprisoned not more than 5 years, or both."

discharged in bankruptcy, [the defendant] counseled [his client] to commit a fraudulent act," which violated the Maryland Rules of Professional Conduct). Taking out loans without intending to repay them may also be considered theft under state law. See Henke v. State, 730 S.W.2d 117, 118-19 (Tex. App.—Corpus Christi 1987) (affirming a grain hauler's conviction of felony theft because he took grain under a contract knowing that he would not be able to pay for it). The government may regulate or ban speech in which a person proposes an illegal transaction. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 102 S.Ct. 1186, 1192 (1982).

Moreover, the Supreme Court has upheld other regulations on attorney speech that are aimed at preventing abusive behavior. In Gentile, the Supreme Court discussed ABA Model Rule of Professional Conduct 3.6 (1981), which prohibits attorneys from making extrajudicial statements that a reasonable person would expect to be spread through public communication if the lawyer knows or should know that making the statement was substantially likely to materially prejudice an adjudicative proceeding. 111 S.Ct. at 2725. The Court indicated that this regulation of attorney speech, as adopted by Nevada, was permissible as it can be "[i]nterpreted in a proper and narrow manner" so as to "punish only speech that creates a danger of imminent and substantial harm." Id. Thus, it suggested that restrictions on attorney speech are proper in certain situations. It indicated that attorneys are "subject to ethical restrictions on speech to which an ordinary citizen would not be," and that a state "may demand some adherence to the precepts of [its legal system] in regulating [attorney] speech as well as [attorney] conduct." Id. at 2743, 2744. The Court also held that "speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press." Id. at 2744. Thus, the Supreme Court has held that attorney speech

may be subject to diminished First Amendment protection when it is regulated in furtherance of a substantial governmental interest. Id. at 2745.

The ability of the government to regulate the speech of attorneys is also made evident by other Model Rules of Professional Conduct. For example, Rule 1.2(d) prohibits attorneys from advising clients to commit fraudulent or criminal acts.[13] This ethical rule states:

> "A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is illegal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good-faith effort to determine the validity, scope, meaning, or application of the law."

The parties do not cite and this court could not find any case in which this rule, as adopted by a state, has been challenged as a violation of the First Amendment right to freedom of speech. Nor does Hersh argue that this type of regulation unconstitutionally restricts attorney speech. As incurring debt in contemplation of bankruptcy, where doing so constitutes an abusive practice, is akin to committing a fraudulent act, it is clear that Congress can constitutionally prevent attorneys or other debt relief agencies from advising their clients to do so.

To avoid potential constitutional questions regarding section 526(a)(4)'s restrictions on speech, this court construes the statute to prevent only a debt relief agency's advice to a debtor to incur debt in contemplation of bankruptcy when doing so would be an abuse of the bankruptcy system. In so interpreting the statute, we avoid the constitutionality questions raised by Hersh (and those

---

[13] This regulation on attorney speech, like the language of Gentile, also reveals how Congress can regulate debt relief agencies other than attorneys. All debt relief agencies, including non-attorneys, have a similar relationship to their debtor-clients because they are all advising their clients in or concerning the bankruptcy process. Thus, the assumed constitutionality of Rule 1.2(d) demonstrates that Congress can prevent all debt relief agencies, not just attorneys who are debt relief agencies, from advising their clients to incur debt before bankruptcy when doing so would be an abuse of the bankruptcy system.

relied on by the Milavetz majority), and conclude that the statute only affects unprotected speech.

While we recognize that the doctrine of constitutional avoidance "is not a license for the judiciary to rewrite language enacted by the legislature," United States v. Albertini, 105 S.Ct. 2897, 2902 (1985), it is nevertheless the fact that the Supreme Court has on several occasions applied to acts of Congress "[a] restrictive meaning for what appear to be plain words" where "such a restrictive meaning must be given if a broader meaning would generate constitutional doubts." United States v. Witkovich, 77 S.Ct. 779, 782 (1957). Thus, in Witkovich the wording of the challenged statutory section "read in isolation and literally" conferred on the Attorney General "authority to require whatever information he deems desirable of aliens whose deportation has not been effected within six months after it has been commanded."[14] Id. But the Court, rejecting "the tyranny of literalness," and relying instead on the doctrine of constitutional avoidance, id., held that the "appropriate construction" was "to limit the statute to authorizing all questions reasonably calculated to keep the Attorney General advised regarding the continued availability for departure of aliens whose deportation is overdue." Id. at 784.

In Zadvydas, the Court addressed a statute authorizing the Attorney General, after the ninety day removal period, to detain without any stated durational limitation, certain aliens subject to final orders of deportation pending effectuation of their deportation. 121 S.Ct. at 2494-95.[15] The Court held

---

[14] The statutory section there in question (former 8 U.S.C. § 1252(d)(3)) provided that the Attorney General could require aliens who had been under a deportation order for more than six months but had not been actually deported "(3) to give information under oath as to his nationality, circumstances, habits, associations, and activities, and such other information, whether or not related to the foregoing, as the Attorney General may deem fit and proper." Witkovich, 77 S.Ct. at 780.

[15] The "removal period" referred to the statutory 90 day period, beginning when the deportation order became final, within which the Attorney General is required to detain the

19

that the statute must be construed, "in light of the Constitution's demands" to be limited to detention for a reasonable time, id. at 2498, which the Court decreed to be presumptively six months (a period nowhere mentioned in the statute) after the ninety day removal period but which could extend past the six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 2505. In this connection, Zadvydas expressly relied on Witkovich, stating:

> "We have read significant limitations into other immigration statutes in order to avoid their constitutional invalidation. See United States v. Witkovich, 353 U.S. 194, 195, 202, 77 S.Ct. 779, 1 L.Ed.2d. 765 (1957) (construing a grant of authority to the Attorney General to ask aliens whatever questions he 'deem[s] fit and proper' as limited to questions 'reasonably calculated to keep the Attorney General advised regarding the continued availability for departure of aliens whose deportation is overdue'). For similar reasons, we read an implicit limitation into the statute before us." 121 S.Ct. at 2498.

Another example of the Court's adoption of a limiting construction of a facially unrestricted statutory provision, to avoid a serious constitutional problem, is afforded by Boos v. Barry, 108 S.Ct. 1157 (1988). There the court faced, inter alia, a First Amendment challenge to the federal statute, applicable to "any building or premises within the District of Columbia used or occupied by any foreign government . . . as an embassy, legation, consulate, or for other official purposes," which provided that "[i]t shall be unlawful" (among other things): "to congregate within 500 feet of any such building or premises, and refuse to disperse after having been ordered so to do by the police authorities of said District." Id. at 1161.

The Court stated:

> "Standing alone, this text is problematic both because it applies to any congregation within 500 feet of an embassy for any reason and

---

alien and affectuate his removal. Zadvydas, 121 S.Ct. at 2494.

because it appears to place no limits at all on the dispersal authority of the police. The Court of Appeals, however, has provided a narrowing construction that alleviates both of these difficulties.

. . .

[T]he Court of Appeals . . . concluded that the statute permits the dispersal only of congregations that are directed at an embassy; it does not grant 'police the power to disperse for reasons having nothing to do with the nearby embassy.' . . . [T]he Court of Appeals further circumscribed police discretion by holding that the statute permits dispersal 'only when the police reasonably believe that a threat to the security or peace of the embassy is present.'" Id. at 1168.

The Court proceeded to reject the "protest that the Court of Appeals was without authority to narrow the statute," stating:

"It is well settled that federal courts have the power to adopt narrowing constructions of federal legislation. . . . Indeed the federal courts have the duty to avoid constitutional difficulties by doing so if such a construction is fairly possible. . . . [W]e see no barrier to the Court of Appeals' adoption of a narrowing construction." Id. at 1169.[16]

The Court then held that "[s]o narrowed, the congregation clause withstands First Amendment overbreadth scrutiny. It does not reach a substantial amount of constitutionally protected conduct . . . ." Id. Thus, the Boos Court approved a limiting construction of the statute – adding a requirement, nowhere expressed in the statute, of reasonable belief of a present threat to the security or peace of a targeted embassy – to save the statute from being invalidated on First Amendment overbreadth grounds.

Many factors demonstrate that section 526(a)(4) can and should be interpreted in an analogous way.

---

[16] The Court likewise rejected the notion that a narrowing construction of this statute could not properly be adopted "unless such a construction is reasonable and readily apparent." Boos, 108 S.Ct. at 1168-69.

First, the fact that section 526(a)(4) utilizes the phrase "in contemplation of" bankruptcy suggests that the statute is directed at situations in which a debtor intends to abuse the bankruptcy system. The phrase "contemplation of bankruptcy" has been defined as: "The thought of declaring bankruptcy because of the inability to continue current financial operations, often coupled with action designed to thwart the distribution of assets in a bankruptcy proceeding." BLACK'S LAW DICTIONARY 336 (8th ed. 2004). The fact that the thought of bankruptcy under this definition is "often coupled with" an intent to abuse the system suggests that when enacting this statute Congress's focus was on instances of bankruptcy abuse to be prohibited. Furthermore, courts have employed the "in contemplation" phrase in a manner suggestive of an intent to defraud the bankruptcy system. See, e.g., In re Mercer, 246 F.3d 391, 421 n.43 (5th Cir. 2001) (en banc) (describing "loading up" on debt, a practice which is abusive of the bankruptcy system, as the practice of "incurring card debt in contemplation of bankruptcy"); In re Charles, 334 B.R. 207, 222 (Bankr. S.D. Tex. 2005) ("It is settled law that a debtor's good faith should be questioned if the debtor makes purchases in contemplation of a bankruptcy case."). Other opinions reflecting a similar understanding of "in contemplation of" bankruptcy are discussed in Judge Colloton's dissenting opinion in Milavetz, 541 F.3d at 799-800.[17]

---

[17] See the following from Judge Colloton's dissenting opinion:
"American and English authorities construing the bankruptcy laws also support the proposition that the words 'in contemplation of' may be understood to require an intent to abuse the bankruptcy laws. In re Pearce, 21 Vt. 611, 19 F. Cas. 50, 53 (D.Vt. 1843) (No. 10873) (concluding that an act was done 'in contemplation of bankruptcy' if it was done 'in anticipation of breaking or failing in his business, of committing an act of bankruptcy, or of being declared bankrupt at his own instance, on the ground of inability to pay his debts, and intending to defeat the general distribution of effects, which takes place under a proceeding in bankruptcy.') (emphasis added); Morgan v. Brundrett, 5 Barn. & Ad. 289, 296, 110 Eng. Rep. 798, 801 (K.B. 1833) (Parke, J.) (interpreting 'in contemplation of bankruptcy' to mean that 'the payment or delivery must be

The remedies for violations of section 526(a)(4), which are only civil, also reflect that the focus of that section is to preclude attorneys from advising clients to incur debt in order to abuse the bankruptcy system. The primary remedy for a violation of section 526(a)(4) is a civil action by the debtor or state attorney general to recover actual damages for the debtor. 11 U.S.C. § 526(c)(2)-(3). Actual damages, as well as restitution for any fees paid the violator by the debtor, and attorneys' fees can be recovered by a debtor when a debt relief agency intentionally or negligently fails to comply with section 526, 527, or 528. Id. § 526(c)(2)(A). Furthermore, if the state has reason to believe that a debt relief agency has violated section 526, it may bring an action to enjoin the violation, bring an action on behalf of its residents to recover actual damages for debtors arising out of the violation, and can recover costs and attorneys' fees from the debt relief agency if it is successful. Id. § 526(c)(3)(A)-(C).[18] Under

with intent to defeat the general distribution of effects which takes place under a commission of bankruptcy.'); Fidgeon v. Sharpe, 5 Taunt. 539, 545-46, 128 Eng. Rep. 800, 802-03 (C.P. 1814) (Gibbs, C.J.) (An act made in contemplation of bankruptcy 'must be intended in fraud of the bankrupt laws.'); cf. Buckingham v. McLean, 54 U.S. 151, 167, 13 How. 151, 14 L.Ed. 91 (1851) . . . id. at 169 (relying on English bankruptcy decisions as instructive authority on meaning of the former Bankrupt Act)." Milavetz, 541 F.3d at 799-800.

[18] 11 U.S.C. § 526(c)(2)-(3) provides:
"(2) Any debt relief agency shall be liable to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs if such agency is found, after notice and a hearing, to have—
(A) intentionally or negligently failed to comply with any provision of this section, section 527, or section 528 with respect to a case or proceeding under this title for such assisted person;
(B) provided bankruptcy assistance to an assisted person in a case or proceeding under this title that is dismissed or converted to a case under another chapter of this title because of such agency's intentional or negligent failure to file any required document including those specified in section 521; or
(C) intentionally or negligently disregarded the material requirements of this title or the Federal Rules of Bankruptcy Procedure applicable to such agency.
(3) In addition to such other remedies as are provided under State law, whenever the chief law enforcement officer of a State, or an official or agency

section 526(c)(5), a bankruptcy court may impose an appropriate civil penalty or enjoin a violation if it finds intentional violations of the provisions or a clear and consistent practice of violations. Id. § 526(c)(5). Congress's emphasis on actual damages for violations of section 526(a)(4) strongly suggests that Congress viewed that section as aimed at advice to debtors which if followed would have a significant risk of harming the debtor. This suggests that Congress only intended to prevent debt relief agencies from advising clients to incur debt before bankruptcy when doing so would be abusive, and thus have significant potential negative repercussions for the debtor such as dismissal of a petition or denial of discharge.

In enacting the BAPCPA, Congress was attempting to address common abuses of the bankruptcy system. Congress concluded that there was a pervasive abuse of the bankruptcy system by debtors who incur debt before bankruptcy with the intention of having their debt discharged. See HOUSE REPORT at 15 (referring to the "abusive practices by consumer debtors who . . . knowingly load up with credit card purchases or recklessly obtain cash advances and then file for bankruptcy relief"). This Congressional intent is made evident by the changes that the BAPCPA made to section 523(a)(2)(C)(i)(I) to make the rules regarding debt for eve-of-bankruptcy spending more stringent. This provision made a debt incurred for "luxury goods" non-dischargeable if over $550 and incurred within ninety days of filing for bankruptcy as opposed to the previous rule, which made a debt for "luxury goods" non-dischargeable if over

---

designated by a State, has reason to believe that any person has violated or is violating this section, the State—
(A) may bring an action to enjoin such violation;
(B) may bring an action on behalf of its residents to recover the actual damages of assisted persons arising from such violation, including any liability under paragraph (2); and
(C) in the case of any successful action under subparagraph (A) or (B), shall be awarded the costs of the action and reasonable attorneys' fees as determined by the court."

$1,225 of debt was incurred within sixty days of bankruptcy. 11 U.S.C.A. § 523, Historical and Statutory Notes. It appears that Congress enacted section 526(a)(4) as a means of combating such abuse.

In enacting the BAPCPA, Congress also expanded the bankruptcy courts' authority to dismiss petitions for abuse of the bankruptcy system, which likewise reflects congressional intent to curb bankruptcy abuse through the new act. Under the former version of section 11 U.S.C. § 707(b)(1), a bankruptcy court could dismiss a petition for "substantial abuse," such as when a debtor accumulated debt in contemplation of bankruptcy with the intention of having the debt discharged. Now a bankruptcy petition may be dismissed for mere "abuse" instead of "substantial abuse," and the statutory assumption in favor of granting the relief sought by the debtor has been repealed. 11 U.S.C. § 707(b)(1).[19] Moreover, under new section 707(b)(4)(C) an attorney's signature on a petition, pleading or motion certifies that after reasonable investigation the attorney has determined that it "does not constitute an abuse under paragraph (1)." This demonstrates that Congress intended to curb abuse with the new provisions of the BAPCPA, and suggests that as part of this plan, section 526(a)(4) is only meant to curb abusive practices.

In the BAPCPA, Congress also introduced "means testing" to restrict debtors who can repay at least a portion of their debts from obtaining complete discharge under Chapter 7. See HOUSE REPORT at 2 ("The heart of the [BAPCPA's] consumer bankruptcy reforms consists of the implementation of an

---

[19] Bad faith pre-petition conduct by a debtor justifies dismissal of a bankruptcy proceeding under other chapters of the bankruptcy code as well. See, e.g., Marrama, 127 S.Ct. at 1107, 1111-12 (indicating that "despite the absence of any statutory provision specifically addressing the issue, the federal courts are virtually unanimous that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a Chapter 13 case," and holding that 11 U.S.C. § 706(a), which allows (without relevant express restriction) conversion of a bankruptcy from a Chapter 7 case to a Chapter 13 case, does not allow such a conversion in cases in which a debtor has acted in "bad faith").

income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford."). Under this provision, the debtor's petition for relief under Chapter 7 is presumed to be abusive if the debtor's income exceeds the unsecured debts by a specified ratio.[20] 11 U.S.C. § 707(b)(2)(A). Thus, a debtor who is able to repay a certain amount of his debts must file under Chapter 13 or 11, both of which allow for a structured repayment plan, or have his case dismissed. However, such means testing gives debtors an incentive to load up on debt because a higher debt ratio can allow a debtor to avoid a Chapter 13 repayment plan and obtain discharge under Chapter 7 by manipulating the formula under which bankruptcy abuse is presumed. This incentive structure likely raised concern that attorneys and others would advise clients to take on more debt before filing for bankruptcy in order to have their debts discharged and to avoid a Chapter 13 repayment plan. This also suggests that Congress intended section 526(a)(4)'s restriction on advice to incur "more debt in contemplation of" bankruptcy to prevent that sort of abuse of the bankruptcy system.

The placement of section 526(a)(4) among three provisions meant to curb abuse of the bankruptcy system by debt relief agencies likewise suggests that the statute was only intended to curb abuse. Section 526(a) contains three other rules of professional conduct designed to protect debtors from abusive practices of debt relief agencies. Section 526(a)(1) requires debt relief agencies to perform

---

[20] One treatise explains the means test as follows:
"The debtor must average net income from the six months prior to a bankruptcy filing (net of allowable expenses), and multiply that monthly average by 60. If the debtor is able to pay at least 25% of his or her consumer debt, with income not necessary for the maintenance of the debtor and allowed dependants, then the debtor will be directed to switch out of Chapter 7 to a Chapter 13 repayment plan." WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE § 26:8 (3d ed. 2008).

all services promised, section 526(a)(2) prohibits them from advising an assisted person to make untrue or misleading statements when seeking bankruptcy relief, and section (a)(3) precludes debt relief agencies from misrepresenting the services they will provide or the costs or benefits of filing for bankruptcy relief. This suggests that Congress did not enact 526(a)(4) as a sweeping prohibition on good faith, lawful, and ethical advice.

For the reasons stated above, we hold that under the doctrine of constitutional avoidance, the language of section 526(a)(4) can and should be interpreted only to prohibit attorneys from advising clients to incur debt in contemplation of bankruptcy when doing so would be an abuse or improper manipulation of the bankruptcy system. Thus, section 526(a)(4) has no application to good faith advice to engage in conduct that is consistent with a debtor's interest and does not abuse or improperly manipulate the bankruptcy system.

B.    Overbreadth

Hersh argues that the district court correctly concluded that section 526(a)(4) is facially unconstitutional.[21] The Government challenges this holding. Hersh does not suggest that the statute is invalid "as applied" to her or that if this court does not hold section 526(a)(4) facially invalid, it should invalidate the statute on more narrow grounds.[22] Thus, we will only address whether the

---

[21] In her Second Amended Complaint for Declaratory Judgment and Permanent Injunctive Relief, Hersh contended that § 526(a)(4) "violates the First Amendment, on its face and as applied, because it prohibits, under threat of civil penalty, Constitutionally protected speech." However, she argued in her motion for summary judgment and in her briefs only that the statute is facially unconstitutional.

[22] It is questionable whether Hersh would have standing to bring an as-applied challenge to § 526(a)(4) as the statute has not been enforced against her and there is no evidence or allegation that anyone has threatened to enforce it against her for giving her clients advice in violation of the statute (or for any other reason). However, as she clearly does not make an as-applied argument in her brief and the district court held the statute facially invalid, we need not determine whether she has demonstrated standing for an as applied challenge.

district court correctly concluded that section 526(a)(4) is unconstitutional on its face.

A court can hold a statute to be facially unconstitutional, as opposed to unconstitutional "as applied," if it is excessively vague or substantially overbroad. See JOHN E. NOWAK & RONALD D. ROTUNDA, CONSTITUTIONAL LAW 1142 (7th ed. 2004). The district court held section 526(a)(4) facially unconstitutional on overbreadth grounds. Hersh, 347 B.R. at 25.[23] According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." United States v. Williams, 128 S.Ct. 1830, 1838 (2008). Such facial challenges can succeed only when this overbreadth is substantial in relation to the statute's legitimate reach. Id. There must be a "significant imbalance between the protected speech the statute should not punish and the unprotected speech it legitimately reaches." Shackelford v. Shirley, 948 F.2d 935, 940 (5th Cir. 1991). The party challenging the statute must demonstrate "'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the [c]ourt' before a statute will be struck down as facially overbroad." Id. (alterations in original) (quoting City Council of Los Angeles v. Taxpayers for Vincent, 104 S.Ct. 2118, 2126-27 (1984)).

The fact that a court can hypothesize situations in which the statute will impact protected speech is not alone sufficient. Taxpayers for Vincent, 104 S.Ct. at 2126; Shackelford, 948 F.2d at 940. Facial challenges to the constitutionality

---

[23] There are two tests for determining whether a statute is facially unconstitutional on overbreadth grounds. Washington State Grange v. Washington State Republican Party, 128 S.Ct. 1184, 1190 (2008). In cases that do not involve First Amendment claims, a statute is overbroad if it is "unconstitutional in all of its applications." Id. (citing United States v. Salerno, 107 S.Ct. 2095, 2100 (1987)). However, in the First Amendment context, there is a second type of facial challenge in which a law may be impermissibly overbroad if "a substantial number of its applications are unconstitutional judged in relation to the statute's plainly legitimate sweep." Id. at 1190 n.6 (internal quotations omitted).

of statutes should be granted "sparingly, and only as a last resort," so as-applied challenges are preferred. Broadrick v. Oklahoma, 93 S.Ct. 2908, 2916 (1973). Facial challenges "often rest on speculation" because they do not involve specific applications of a statute, but rather hypothetical applications. Washington State Grange, 128 S.Ct. at 1191. They also "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." Id. Invalidating a law that is perfectly constitutional in some applications has "obvious harmful effects." Williams, 128 S.Ct. at 1838.

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." Williams, 128 S.Ct. at 1838. Although, as described above, Hersh and the district court noted several examples in which advice to a client to incur debt in contemplation of bankruptcy should be protected by the First Amendment, as described above, this court has construed the statute so that it does not apply to these situations. As so construed, the statute does not restrict the speech that Hersh argues is protected by the First Amendment. Thus, there is no significant imbalance between any protected speech the statute restricts and the speech that the statute legitimately restricts.

Moreover, as the Government notes, the district court did not address, and Hersh did not discuss in her motion for summary judgment, the final portion of section 526(a)(4), which prohibits debt relief agencies from advising clients to incur debt in order to pay their fees.[24] In her brief in this court, Hersh states

---

[24] This part of § 526(a)(4) states: "A debt relief agency shall not . . . advise an assisted person or prospective assisted person to incur more debt . . . to pay an attorney or bankruptcy petition preparer fee or charge for services performed as part of preparing for or representing a debtor in a case under this title."

that this prohibition also violates the First Amendment and separation of powers principles. Hersh argues that it creates an unconstitutional restriction on speech because it inhibits advice to hire a lawyer, and "if incurring [debt to pay fees for services] is the only way that a person of few means in financial distress may obtain a lawyer, Congress may not prevent an attorney from advising a client to do it."

However, Hersh raised her arguments regarding this provision of section 526(a)(4) only on appeal. This court generally does not address an argument raised for the first time on appeal. See, e.g., Leverette v. Louisville Ladder Co., 183 F.3d 339, 342 (5th Cir. 1999). Furthermore, Hersh does not argue – and has never alleged – that she plans to violate (or has ever violated) this provision by advising her clients to incur debt to pay her fees (nor does anything in the record so suggest). Moreover, Hersh does not cite authority for the proposition that preventing a debt relief agency from abusing its position by seeking preferential treatment in the bankruptcy process violates the constitution. Even if Hersh's arguments are correct, and the attorneys' fees provision of section 526(a)(4) would unconstitutionally restrict some speech, there is no indication and she does not argue, that this restriction would be substantial in comparison to the legitimate reach of the statute.[25]

Under this court's construction of section 526(a)(4), it is clear that the potential for the statute to prohibit protected speech is not by any means substantial in relation to the statute's legitimate reach. Therefore, we hold that the district court erred in holding section 526(a)(4) unconstitutional on its face and we reverse the judgment of the district court on this issue.[26] We also reverse

---

[25] Accordingly, we do not address Hersh's contentions on appeal concerning the attorney fees clause in § 526(a)(4).

[26] Any remaining challenge to specific applications of § 526(a)(4) would be more appropriately addressed in an as-applied challenge. See Washington State Grange, 128 S.Ct. at 1195.

and dissolve the injunction imposed by the district court preventing the enforcement of this statute.

III.   Whether 11 U.S.C. § 527(b) violates the First Amendment [27]

Hersh also argues that the district court erred in holding that 11 U.S.C. § 527(b)[28] does not violate the First Amendment.[29]   Section 527(b) requires attorneys to provide "assisted persons" with written notice of certain basic information regarding bankruptcy proceedings.  It states:

> "A debt relief agency providing bankruptcy assistance to an assisted person shall provide each assisted person at the same time as the notices required under subsection (a)(1) the following statement, to the extent applicable, or one substantially similar. The statement shall be clear and conspicuous and shall be in a single document separate from other documents or notices provided to the assisted person."  11 U.S.C. § 527(b).

---

[27] Hersh states in her brief that § 527 impermissibly impinges her Fifth Amendment right to act as counsel in a civil matter.  The district court dismissed Hersh's Fifth Amendment claim because Hersh lacked standing to assert her clients' right to counsel and because the Fifth Amendment does not give her the right to provide counsel to her clients.  Hersh, 347 B.R. at 28.  Hersh makes no argument in the text of her brief supporting her Fifth Amendment claim, and never asserts that she has a right to provide counsel to her clients under the Fifth Amendment.  Thus, the argument was not sufficiently briefed, and we will consider it waived and do not address it.  See Procter & Gamble Co. v. Amway Corp., 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

[28] Although in her complaint, Hersh suggests § 527 is unconstitutional in its entirety, in her brief here, she only discusses § 527(b), not the entire § 527.  Thus, any arguments that Hersh could make regarding the other subsections of § 527 have been waived, and we will only address her argument regarding the constitutionality of § 527(b) at this time.   See Procter & Gamble Co., 376 F.3d at 499 n.1.

[29] In her original complaint, Hersh indicated that she is challenging § 527 on its face and as applied.  She repeated this claim in her First Amended Complaint for Declaratory Judgment, Temporary and Permanent Injunctive Relief.  However, it is immaterial whether Hersh challenges this statute on its face or as it applies to her because we conclude that it does not violate Hersh's First Amendment rights for any of the reasons that she proposes.

The statement set forth in the statute provides basic factual information regarding bankruptcy proceedings.[30] The statement that a debt relief agency provides to its client need not be identical to the one provided in the statute as long as it is "substantially similar." Id. Furthermore, section 527(b) states that a debt relief agency only needs to provide the information "to the extent

---

[30] As it appears in § 527(b), this statement is as follows:

"'IMPORTANT INFORMATION ABOUT BANKRUPTCY ASSISTANCE SERVICES FROM AN ATTORNEY OR BANKRUPTCY PETITION PREPARER.

'If you decide to seek bankruptcy relief, you can represent yourself, you can hire an attorney to represent you, or you can get help in some localities from a bankruptcy petition preparer who is not an attorney. THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARER WILL DO FOR YOU AND HOW MUCH IT WILL COST. Ask to see the contract before you hire anyone.

'The following information helps you understand what must be done in a routine bankruptcy case to help you evaluate how much service you need. Although bankruptcy can be complex, many cases are routine.

'Before filing a bankruptcy case, either you or your attorney should analyze your eligibility for different forms of debt relief available under the Bankruptcy Code and which form of relief is most likely to be beneficial for you. Be sure you understand the relief you can obtain and its limitations. To file a bankruptcy case, documents called a Petition, Schedules and Statement of Financial Affairs, as well as in some cases a Statement of Intention need to be prepared correctly and filed with the bankruptcy court. You will have to pay a filing fee to the bankruptcy court. Once your case starts, you will have to attend the required first meeting of creditors where you may be questioned by a court official called a 'trustee' and by creditors.

'If you choose to file a chapter 7 case, you may be asked by a creditor to reaffirm a debt. You may want help deciding whether to do so. A creditor is not permitted to coerce you into reaffirming your debts.

'If you choose to file a chapter 13 case in which you repay your creditors what you can afford over 3 to 5 years, you may also want help with preparing your chapter 13 plan and with the confirmation hearing on your plan which will be before a bankruptcy judge.

'If you select another type of relief under the Bankruptcy Code other than chapter 7 or chapter 13, you will want to find out what should be done from someone familiar with that type of relief.

'Your bankruptcy case may also involve litigation. You are generally permitted to represent yourself in litigation in bankruptcy court, but only attorneys, not bankruptcy petition preparers, can give you legal advice.'"

applicable." Id. The statement should be provided to the debtor within three days of the commencement of representation. Id.

The district court held that section 527 does not violate the First Amendment because it "advances a sufficiently compelling government interest and does not unduly burden either the attorney-client relationship or the ability of a client to seek bankruptcy." Hersh, 347 B.R. at 27.[31] The court concluded that "[t]he factual, viewpoint-neutral statement [required by the statute] provides a sufficiently benign and narrow means of ensuring that clients are aware of certain general information regarding bankruptcy." Id. Thus, it granted the Government's motion to dismiss Hersh's claim that section 527(b) violates the First Amendment. Id. This court reviews a district court's disposition of a 12(b)(6) motion to dismiss de novo. Equal Access for El Paso, Inc. v. Hawkins, 509 F.3d 697 at 701-02 (5th Cir. 2007).

Hersh argues that the district court erred in holding that section 527(b) is constitutional because the disclosures required by the statute are false, misleading, and not narrowly drawn to further a compelling government interest.

The First Amendment protects compelled speech as well as compelled silence. Thus, it protects an attorney's right not to provide her client with certain factual information. Riley v. Nat'l Fed'n of the Blind of North Carolina, 108 S.Ct. 2667, 2677-78 (1988) (stating that in the context of protected speech, the difference between compelled speech and compelled silence is "without constitutional significance," and that compelled statements of fact as well as compelled statements of opinion burden protected speech). However, the

---

[31] Other courts have addressed this issue as well. While some have held § 527(b) unconstitutional, others have found the statute to be a permissible compulsion of speech. See, e.g., In re Reyes, 361 B.R. at 279 (holding § 527 unconstitutional as it applies to attorneys); Olsen, 350 B.R. at 917 (following the reasoning of the district court in Hersh to hold that § 527 does not unconstitutionally compel speech).

Supreme Court has acknowledged that the government may, under certain circumstances, restrict or compel the speech of professionals. See, e.g., Zauderer v. Office of the Disciplinary Counsel of the Supreme Court of Ohio, 105 S.Ct. 2265, 2282 (1985) (recognizing that "unjustified or unduly burdensome disclosure requirements might offend the First Amendment," but holding that an attorney-advertiser's rights are adequately protected under a state statute requiring certain disclosures in advertisements "as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers").

The Supreme Court addressed a compelled speech case in Riley, 108 S.Ct. 2667. There, the Court applied strict scrutiny to invalidate a North Carolina law that required professional fundraisers to disclose to solicited potential donors the percentage of charitable contributions that the fundraiser collected during the past year that were actually given to the charities represented. Id. at 2672, 2677-78. Strict scrutiny was held appropriate because the Court determined that the statute implemented a content-based regulation on speech. Id. at 2677. The Riley Court held that the state's interest in "informing [charitable] donors how the money they contribute is spent" was "not as weighty as the State assert[ed]." Riley, 108 S.Ct. at 2678. It also held that the requirement was "unduly burdensome and not narrowly tailored," id., and would hamper charitable fundraising and "necessarily discriminates against small and unpopular charities." Id. at 2679. It listed multiple "more benign and narrowly tailored" options that were available. Id. Thus, the Court held that the statute was unconstitutional in violation of the First Amendment. Id. at 2680.

In Planned Parenthood of Southeastern Pennsylvania v. Casey, 112 S.Ct. 2791, 2826 (1992), a plurality of the Supreme Court upheld a Pennsylvania law requiring doctors to provide women seeking abortions with certain information about the procedure, the health risks, conditions surrounding the pregnancy,

and availability of state-provided information. The Court determined that the state had a "legitimate goal" of protecting the life of an unborn child and making sure that women make "mature and informed" decisions regarding abortions. Id. at 2824. It further reasoned that the requirement that the doctors provide the women seeking abortions with certain information was not a "substantial obstacle" to obtaining an abortion, and therefore, not an "undue burden" on the woman. Id.

The district court properly concluded that the government's interest sought to be furthered by section 527(b) was "substantially compelling" for First Amendment purposes. The government's interest to be furthered by section 527(b) is in ensuring that debtors who are contemplating filing for bankruptcy have some basic knowledge about the process. The amount of debt discharged in bankruptcy is immense, so the government has a compelling interest in ensuring that those who enter bankruptcy know what it entails. HOUSE REPORT at 4 (indicating that in 1997, it was estimated that more than $44 billion of debt was discharged by debtors who filed for bankruptcy). Furthermore, section 527(b) requires debt relief agencies to provide information to "assisted persons," who are consumer debtors with a limited amount of non-exempt property. 11 U.S.C. § 101(3). Congress could have determined that these consumer debtors often lack basic knowledge about the bankruptcy system in comparison both to creditors and to their advisors (who are advising them "in return for the payment of money or other valuable consideration"), which puts the debtors at a disadvantage. The government has an interest in having the bankruptcy system explained in "plain English" to such debtors contemplating filing for bankruptcy.

The district court also correctly concluded that section 527(b) is narrowly tailored to promote this government interest, and creates a reasonable burden on attorneys and other debt relief agencies. The statute merely sets forth a list

of information about bankruptcy proceedings that a debt relief agency – acting in return for the payment of money or other valuable consideration – must provide to its clients who are "assisted persons." It does not limit the amount of information that the debt relief agency can provide, so the debt relief agency is free to expand upon, clarify, or even express disagreement with any of the provisions in the required statement. Furthermore, because section 527(b) provides that the statement should be given to the client "to the extent applicable," if the debt relief agency feels that some of the provisions of the statement are not relevant to its client, it can omit the irrelevant information. This language also provides great leeway for debt relief agencies deciding whether it is necessary to provide a client with the statement at all. If, for example, Hersh represents a creditor who qualifies as an "assisted person," section 527(b) only requires her to present the creditor with the statement if it is "applicable" to that client. Furthermore, although it may be a burden for a debt relief agency to determine whether a prospective client is an "assisted person" in three days, it would not be unduly burdensome to simply provide the person with the section 527(b) statement, and explain that it may not be necessary. Section 527(b) is narrowly tailored to Congress's interest in educating debtors about the bankruptcy system because it does not inhibit clients from obtaining relief, nor does it significantly interfere with the relationship between the debt relief agency and its client. As a debt relief agency, Hersh can provide her clients with all of the information she desires, she simply must also provide them the basic information required by section 527(b), but only when and to the extent that information is relevant to the client's situation (and she is free to add any appropriate explanation desired).

Furthermore, contrary to Hersh's arguments, section 527(b) does not require Hersh or other debt relief agencies to make false and misleading statements. Most of the statements that Hersh cites as examples of false and

36

misleading material are simply generalizations that she is free to expand upon and clarify for her clients. For example, Hersh complains that the assertion in the statute that her client "will have to pay a filing fee to the bankruptcy court" is misleading because the fee can be deferred under Federal Rule of Bankruptcy Procedure 1006(b). Hersh is completely free to explain to her client the deferral options. She can clarify for her client other provisions in the section 527(b) statement that she claims are false and misleading, or even express disagreement with them. For example, she can explain to her client that the bankruptcy trustee is not literally a "court official," and that Chapter 13 cases do not have a three year minimum requirement for certain repayment plans as the statement suggests. Furthermore, contrary to Hersh's arguments, the fact that the section 527(b) statement does not mention that only attorneys can give advice regarding whether to reaffirm debts and prepare a Chapter 13 plan, and that only attorneys can help with confirmation hearings, does not mean that she is required to provide her clients with "false and misleading" information. Again, she is free to explain every detail of the bankruptcy process as it applies to her client. She may even alter the language of the statement to fit her preferences as long as the content remains "substantially similar."

We note that the Court in Milavetz unanimously upheld 11 U.S.C. §§ 528(a)(4) and 528(b)(2), rejecting challenges thereto which are essentially parallel to those raised by Hersh as to section 527(b). See Milavetz, 541 F.3d at 794-97. This reasoning in Milavetz supports our holding as to section 527(b).

For the reasons stated above, we hold that the district court properly concluded that section 527(b) does not violate Hersh's First Amendment rights because it does not unduly burden her or her clients, and is narrowly tailored to promote the government's compelling interest in ensuring that consumer debtors are aware of basic bankruptcy information.

## CONCLUSION

The judgment of the district court is AFFIRMED insofar as it holds that an attorney providing, in return for the payment of money or other valuable consideration, "bankruptcy assistance" as defined in section 101(4A) of the Code, to "an assisted person" as defined in section 101(3) of the Code, is a "debt relief agency" as defined in section 101(12A) of the Code, for purposes of the BAPCPA, and is,

AFFIRMED and insofar as it holds that section 527(b) of the Code is not invalid as violative of the First Amendment, and is,

REVERSED insofar as it holds that section 526(a)(4) of the Code is facially unconstitutional in violation of the First Amendment, and is REVERSED insofar as it enjoins the enforcement of section 526(a)(4), and,

Judgment is here rendered dissolving the injunction issued by the district court and,

Judgment is further here rendered that Hersh take nothing by her suit.